UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

JOHN DOE and JANE DOE, Individually and on behalf of M.S., an Infant, as Next Friends,

Plaintiffs,

- against –

ANTHONY ANNUCCI, Acting Commissioner of the New York State Department
of Corrections and Community Supervision; TINA STANFORD, Chairwoman of the New
York State Board of Parole; WILLIAM HOGAN, Regional Director of New York State
Department of Corrections and Community Supervision; JOSEPH LIMA, Bureau Chief of the
Manhattan VI Area Office of the New York State Division of Parole; TERRENCE X. TRACY,
Counsel for the Board of Parole; Parole Officer EMILY SCOTT; Parole Officer SIMON
VALERIO; Parole Officer REBECCA RODRIGUEZ; Parole Officer RENNIE RODRIGUEZ;
Senior Parole Officer FNU ROSADO; Parole Officer FNU MERCEDES,

Defendants.

_____

**MEMORANDUM OF LAW ON BEHALF OF**
**DEFENDANTS ANNUCCI, STANFORD and TRACY IN SUPPORT**
**OF THEIR MOTION TO DISMISS PURSUANT TO F.R.C.P. 12(b)**
1:14 Civ. 2953 (PAE)

_____

***GLEASON, DUNN, WALSH & O'SHEA***
Attorneys for Defendants Annucci, Stanford and Tracy
Office and P.O. Address
40 Beaver Street
Albany, New York 12207
(518) 432-7511

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................... i

PRELIMINARY STATEMENT ............................................................................ 1

    Defendant Tina Stanford................................................................................. 2

    Defendant Anthony Annucci .......................................................................... 2

    Defendant Terrence X. Tracy ......................................................................... 2

FACTS ............................................................................................................. 3

    DOCCS ........................................................................................................... 7

    Defendant Anthony Annucci .......................................................................... 7

    The Board of Parole ....................................................................................... 7

    Defendant Tina Stanford................................................................................. 8

    Defendant Terrence X. Tracy ......................................................................... 8

POINT I

    PLAINTIFFS HAVE FAILED TO PLEAD FACTS SUFFICIENT
    TO STATE A CLAIM AGAINST THE MOVING DEFENDANTS. ............................. 8

    A. Standard under F.R.C.P. 12(b)(6) .............................................................. 8

    B. Section 1983 .............................................................................................. 9

    C. Lack of Personal Involvement .................................................................. 9

        1) The allegation that the Moving Defendants hold high-level positions ......... 11

        2) The allegations that plaintiffs' counsel sent letters to these Moving
        Defendants ................................................................................................ 12

            a) Receiving and referring letters to appropriate personnel for
            action/response does not create Section 1983 liability ............................ 12

            b) The second, fourth and fifth avenues of liability set forth in
            *Colon* is no longer a basis for supervisory liability .................................. 15

1

POINT II

    THE MOVING DEFENDANTS ENJOY ABSOLUTE AND
    QUALIFIED IMMUNITY FOR THEIR ALLEGED CONDUCT ............................... 15

    A.  Absolute Immunity under §1983 Bars Claims Against the Moving Defendants ..... 16

    B.  The Moving Defendants Enjoy Qualified Immunity for Their Alleged Conduct .... 18

POINT III

    THE CLAIMS ASSERTED AGAINST THE MOVING DEFENDANTS IN
    THEIR OFFICIAL CAPACITIES ARE MOOT ........................................................... 24

CONCLUSION.................................................................................................. 25

## TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................ passim

*Baker v. Welch*, No. 03 Civ. 2267 (JSR)(AJP), 2003 WL 22901051 (S.D.N.Y. Dec. 10, 2003) ...20

*Barna v. Travis*, 239 F.3d 169 (2d Cir. 2001) ................................................................20

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ..................................................8, 9

*Bellamy v. Mount Vernon Hosp.*, No. 07 Civ. 1801 (SAS), 2009 WL 1835939
   (S.D.N.Y. June 26, 2009)................................................................13, 15

*Bellezza v. Holland*, No. 09 Civ. 8434 (PAE), 2012 WL 5426384 (S.D.N.Y. Nov. 7, 2012) ........19

*Bertuglia v. City of New York*, 839 F. Supp. 2d 702 (S.D.N.Y. 2012) ..............................10

*Black v. Coughlin*, 76 F.3d 72 (2d Cir. 1996)................................................................11

*Boddie v. Chung*, No. 09 CV 04789 (RJD)(LB), 2011 WL 1697965
   (E.D.N.Y. May 4, 2011)................................................................20, 23

*Boothe v. Hammock*, 605 F.2d 661 (2d Cir. 1979)................................................................22

*Bracci v. Becker*, No. 1:11-cv-1473 (MAD/RFT), 2013 WL 123810 (N.D.N.Y. Jan. 9, 2013) ....18

*Brown v. Coughlin*, 758 F. Supp. 876 (S.D.N.Y. 1991) ................................................10

*City of Oklahoma City v. Tuttle*, 471 U.S. 808 (1985)................................................................9

*Colombo v. O'Connell*, 310 F.3d 115 (2d Cir. 2002) ................................................................9

*Colon v. Coughlin*, 58 F.3d 865 (2d Cir. 1995)................................................11, 13, 15

*Cooper v. Denison*, No. 08-CV-6238 CJS, 2011 WL 1118685 (W.D.N.Y. March 24, 2011)........20

*Cusamano v. Alexander*, 691 F. Supp. 2d 312 (N.D.N.Y. 2009)................................................20

*Daniels v. Ralph*, No. 10 CV 884, 2012 WL 2120591 (W.D.N.Y. June 11, 2012) ..................20, 21

*Doyle v. Midland Credit Management, Inc.*, 722 F.3d 78 (2d Cir. 2013) ......................................25

*Eisman v. State*, 70 N.Y.2d 175 (1987)................................................................17

*Farid v. Ellen*, 593 F.3d 233 (2d Cir. 2010)................................................................10

*Farrell v. Burke*, No. 97 CIV. 5708 (DAB), 1998 WL 751695 (S.D.N.Y. Oct. 28, 1998).......17, 21

*Giles v. Repicky*, 511 F.3d 239 (2d Cir. 2007) ................................................................19

*Grullon v. City of New Haven*, 720 F.2d 133 (2d Cir. 2013) ......................................................13

*Hilton v. Wright*, 673 F.3d 120 (2d Cir. 2012) ................................................................19

*Hollins v. City of New York*, No. 10 Civ. 1650 (LGS), 2014 WL 836950
   (S.D.N.Y. March 13, 2014)................................................................13

*Howard v. City of New York*, Nos. 12 Civ. 4069 (PAE) (JCF) et al., 2012 WL 7050623
   (S.D.N.Y. Dec. 20, 2012)................................................................9

*Imbler v. Pachtman*, 424 U.S. 409 (1975) ................................................................16

*In re Elevator Antitrust Litig.*, 502 F.3d 47 (2d Cir. 2007) ................................................................9

*Joseph v. Fischer*, No. 08 Civ. 2824 (PKC)(AJP), 2009 WL 3321011 (S.D.N.Y. Oct. 8, 2009)...13

*LaBounty v. Coombe*, No. 95 CIV. 5592 (MBM), 1999 WL 177438 (S.D.N.Y. March 30, 1999)17

*Maldonado v. Fischer*, No. 11-CV-1091Sr, 2012 WL 4461647 (W.D.N.Y. Sept. 24, 2012) ..20, 23

*Martinez v. Winner*, 771 F.2d 424 (10th Cir. 1985) ................................................................18

*Mayorga v. Missouri*, 442 F.3d 1128 (8th Cir. 2006)................................................................16

*McCloud v. Kane*, 491 F. Supp. 2d 312 (E.D.N.Y. 2007) ................................................................20

*McKenna v. Wright*, 386 F.3d 432 (2d Cir. 2004)................................................................16

*Montero v. Travis*, 171 F.3d 757 (2d Cir. 1999)................................................................16

*Moore v. Vega*, 371 F.3d 110 (2d Cir. 2004) ................................................................3

*Morrissey v. Brewer*, 408 U.S. 471 (1972) ............................................................................19, 20

*Musso v. Hourigan*, 836 F.2d 736 (2d Cir. 1988) ............................................................................14

*Ortiz-Rodriguez v. New York State Dep't of Correctional Services*, 491 F. Supp.
    2d 342, (N.D.N.Y. 2007) ............................................................................12

*Pearce v. Labella*, 473 Fed. Appx. 16 (2d Cir. 2012) ............................................................................10

*Pearson v. Callahan*, 555 U.S. 223 (2009) ............................................................................18

*Pena v. Travis*, No. 01 Civ. 8534 (SAS), 2002 WL 31886175 (S.D.N.Y. Dec. 27, 2002).......20, 23

*Pennsylvania Bd. of Probation and Parole v. Scott*, 524 U.S. 357 (1998) ............................................19

*Reichle v. Howards*, 132 S. Ct. 2088 (2012) ............................................................................18, 19, 22

*Rivera v. Fischer*, 655 F. Supp. 2d 235 (W.D.N.Y. 2009) ............................................................................12

*Ross v. Westchester County Jail*, No. 10 Civ. 3937 (DLC), 2012 WL 86467
    (S.D.N.Y. Jan. 11, 2012) ............................................................................10

*Samson v. California*, 547 U.S. 843 (2006) ............................................................................19, 22

*Saucier v. Katz*, 533 U.S. 194 (2001) ............................................................................19

*Scotto v. Alemenas*, 143 F.3d 105 (2d Cir. 1998) ............................................................................16

*Sealey v. Giltner*, 116 F.3d 47 (2d Cir. 1997) ............................................................................12, 13

*Shmueli v. City of New York*, 424 F.3d 231 (2d Cir. 2005) ............................................................................16

*Stewart v. Smallwood*, No. 92 Civ. 4043 (SS), 1993 WL 77381 (S.D.N.Y. March 15, 1993).......17

*Styles v. Goord*, 432 Fed. Appx. 31 (2d Cir. 2011) ............................................................................11

*Thomas v. Venditto*, 925 F. Supp. 2d 352 (E.D.N.Y. 2013) ............................................................................10

*U.S. v. McGeoch*, 546 Fed. Appx. 44 (2d Cir. 2013) ............................................................................21, 22

*U.S. v. McLaurin*, 731 F.3d 258 (2d Cir. 2013) ............................................................................21

*U.S. v. Meyers*, 426 F.3d 117 (2d Cir. 2005) ............................................................................21, 22

*U.S. v. Reeves*, 591 F.3d 77 (2d Cir. 2010) ............................................................................21

*U.S. v. Thomas*, 729 F.2d 120 (2d Cir. 1984) ............................................................................3

*United States v. Reyes*, 283 F.3d 446 (2d Cir. 2002) ............................................................................22

*Vega v. Artus*, 610 F. Supp. 2d 185 (N.D.N.Y. 2009) ............................................................................12

*Vogelfang v. Capra*, 889 F. Supp. 2d 489 (S.D.N.Y. 2010) ............................................................................10, 11, 12

*Walker v. Mattingly*, No. 09-CV-845-JTC, 2012 WL 1160772 (W.D.N.Y. April 5, 2012)............20

*Walter v. Torres*, 917 F.2d 1379 (5th Cir. 1991) ............................................................................17

## Statutes and Regulations

18 U.S.C. §3583(d)(2) ............................................................................21

42 U.S.C. §1983............................................................................ passim

9 N.Y.C.R.R. Part 8002............................................................................20

9 N.Y.C.R.R. Part 8003............................................................................20

Fed. R. of Civ. P. 12(b)(1)............................................................................1

Fed. R. of Civ. P. 12(b)(6)............................................................................1, 8, 15

N.Y. Penal Law §70.40............................................................................22

N.Y. Penal Law §70.40(1)(a)-(b)............................................................................22

N.Y. Penal Law §70.45............................................................................22

N.Y. Penal Law §70.45(1) ............................................................................22


New York Correction Law §201............................................................................7

New York Correction Law §5(1) ............................................................................7

New York Correction Law §5(2) ...................................................................................7
New York Correction Law §7(2) ...................................................................................7
New York Correction Law §7(3) ...................................................................................7
New York Executive Law §259-b(1) ..........................................................................3, 7
New York Executive Law §259-b(3) .............................................................................7
New York Executive Law §259-b(7) .............................................................................8
New York Executive Law §259-c .................................................................................8
New York Executive Law §259-c(1) ...........................................................................22
New York Executive Law §259-c(17) ...........................................................................8
New York Executive Law §259-i(2)(c)(A) ...................................................................20

## Other Authorities

U.S. Constitution, First Amendment.............................................................................6
U.S. Constitution, Fourteenth Amendment.....................................................................6

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOHN DOE and JANE DOE, Individually and on behalf of M.S., an Infant, as Next Friends,

Plaintiffs,

- against –

ANTHONY ANNUCCI, Acting Commissioner of the New York State Department
of Corrections and Community Supervision; TINA STANFORD, Chairwoman of the New
York State Board of Parole; WILLIAM HOGAN, Regional Director of New York State
Department of Corrections and Community Supervision; JOSEPH LIMA, Bureau Chief of the
Manhattan VI Area Office of the New York State Division of Parole; TERRENCE X. TRACY,
Counsel for the Board of Parole; Parole Officer EMILY SCOTT; Parole Officer SIMON
VALERIO; Parole Officer REBECCA RODRIGUEZ; Parole Officer RENNIE RODRIGUEZ;
Senior Parole Officer FNU ROSADO; Parole Officer FNU MERCEDES,

Defendants.

**MEMORANDUM OF LAW ON BEHALF OF
DEFENDANTS ANNUCCI, STANFORD and TRACY IN SUPPORT
OF THEIR MOTION TO DISMISS PURSUANT TO F.R.C.P. 12(b)**
1:14 Civ. 2953 (PAE)

## PRELIMINARY STATEMENT

This Memorandum of Law is respectfully submitted on behalf of the Defendants Anthony

Annucci ("Mr. Annucci" or "Commissioner Annucci"), Tina Stanford ("Ms. Stanford" or

"Chairwoman Stanford"), and Terrence X. Tracy ("Mr. Tracy" or "Counsel Tracy")

(collectively, the "Moving Defendants") and in support of their motion for an order pursuant to

F.R.C.P. 12(b)(6) and (1) dismissing the Complaint brought against them pursuant to 42 U.S.C.

§1983 ("§1983").

The Complaint makes detailed allegations regarding the acts and omissions of several

defendants. However, the plaintiffs have pled no facts to support their claim that the Moving

Defendants—Commissioner Annucci, Chairwoman Stanford and Counsel Tracy—took any act,

or failed to act in any way, that caused the plaintiffs to suffer a deprivation of their constitutional

rights. The <u>only</u> allegations in the Complaint regarding these defendants are as follows:

## Defendant Tina Stanford

14.    Defendant Tina Stanford is Chairwoman of the New York State Board of Parole.

## Defendant Anthony Annucci

13.    Defendant Anthony J. Annucci is the Acting Commissioner of the New York State Department of Corrections and Community Supervision ("DOCCS").

\*                    \*                    \*

52.    On September 17, 2013, 12 days after Marc Smith was forced out of his home, an attorney for Mr. Smith sent a letter to the New York State Board of Parole; Defendant Anthony J. Annucci, Acting Commissioner of DOCCS; and Defendant Terrence X. Tracy, Esq., counsel for the Board of Parole. *See* Letter from Lauren Stephens-Davidowitz dated Sept. 17, 2013, attached as Exh. I. The letter requested that DOCCS immediately permit Mr. Smith to return to his family's home. *Id.*

## Defendant Terrence X. Tracy

17.    Defendant Terrence X. Tracy is Counsel for the Board of Parole.

\*                    \*                    \*

52.    On September 17, 2013, 12 days after Marc Smith was forced out of his home, an attorney for Mr. Smith sent a letter to the New York State Board of Parole; Defendant Anthony J. Annucci, Acting Commissioner of DOCCS; and Defendant Terrence X. Tracy, Esq., counsel for the Board of Parole. *See* Letter from Lauren Stephens-Davidowitz dated Sept. 17, 2013, attached as Exh. I. The letter requested that DOCCS immediately permit Mr. Smith to return to his family's home. *Id.*

\*                    \*                    \*

61.    On January 30, 2014, having not received any response to her inquiry into the timeliness of DOCCS' investigation, Mr. Smith's lawyer contacted Debra Martin, Assistant Attorney General in Charge of the Rochester Regional Office of the New York State Attorney General Office, who represents the Defendants in *Doe v. Overfield.* Martin contacted defendant Terrence X. Tracy, who then called Mr. Smith's attorney to tell her that he would contact Bureau Chief Lima to determine the status of the investigation.

2

In addition, the Complaint and/or certain of its exhibits indicate that Counsel Tracy was a copied recipient of certain letters attached to the Complaint as Exhibits (*see* Complaint, Ex. J and K). There is, however, no allegation that Counsel Tracy a) had any duty to respond to or act upon the letters, or b) did or did not do so.

Based on, *inter alia*, the foregoing, and as set forth in greater detail herein, these defendants ground their motion upon the plaintiffs' failure to plead facts alleging the personal involvement of these defendants in the constitutional deprivation alleged. Defendants also seek dismissal on the bases of: 1) the doctrine of absolute immunity; 2) the doctrine of qualified immunity; and 3) as to the equitable relief, the mootness doctrine.

## FACTS

Plaintiff John Doe was convicted of second degree rape, second degree criminal sexual act, and endangerment of the welfare of a female child and was serving a sentence of imprisonment in a New York State correctional facility.

On November 2, 2011, the Parole Board granted Mr. Doe parole upon the special condition that he would have

> "no contact with any person under the age of eighteen, without the written permission of the supervising parole officer" [the "Special Condition"].

(Complaint ¶¶27, 32, Ex. B). The Complaint does not allege that any of the Moving Defendants were involved in the imposition of the Special Condition.[1] (*See* Complaint ¶32).

The "supervising" parole officers who have had custody[2] over plaintiff John Doe during the period of his parole supervision have exercised the discretion granted to them under this Special Condition in differing ways. (*See* Complaint ¶¶34, 38, 41, 46, 48). At certain times,

---

[1] At this time, Ms. Stanford was not the Chairwoman or even a member of the Board of Parole. (*See* Parole Board Members, *available at* www.parole.ny.gov/introboardmembers.html [reflecting Defendant Stanford to have an "original confirmation date" of June 19, 2013 as a member of the Parole Board]).

[2] "A parole officer has legal custody of the parolee to whom he is assigned, which imposes on the officer a duty to monitor that parolee's adherence to the terms of his parole." *Moore v. Vega*, 371 F.3d 110, 116 (2d Cir. 2004), *citing U.S. v. Thomas*, 729 F.2d 120, 123 (2d Cir. 1984), *citing* N.Y. Executive Law §259-i(2)(b).

parole officers barred plaintiff John Doe from residing with his family, which included his underage daughter and infant son. (Complaint ¶¶34, 41, 48, Ex. E). At other times, parole officers permitted plaintiff John Doe to reside with his family. (Complaint ¶¶38, 46). Either way, the Complaint does not allege that any of the Moving Defendants were involved in discretionary application of this Special Condition by the "supervising parole officers." (See Complaint ¶¶34, 38, 41, 46, 48).

The Complaint does not even allege that any of the Moving Defendants were made aware of how this parole condition was being applied until, at the earliest, after plaintiffs' attorney sent a letter dated September 17, 2013 addressed to the "Parole Board", Commissioner Annucci and Mr. Tracy (Complaint ¶52 Ex. I). The eight-page, single-spaced letter with multiple attachments set forth a series of alleged facts and conclusions and focused upon the fact that Mr. Doe had been directed by his new parole officer to leave his home where he had been residing, allegedly without incident or harm to his minor children. The letter requested the Parole Board to "remove this condition" (Complaint, Ex. I, p. 7, last line of second full paragraph)[3] and "to **immediately** allow Mr. Smith to return home" (Complaint Ex. I at p.1) (emphasis in orig.). Other than the allegation that the September 17, 2013 letter was sent to them, the Complaint makes no other allegation that even refers to Commissioner Annucci or Chairwoman Stanford,[4] much less alleges that they had any personal involvement in the alleged constitutional deprivation. (See Complaint ¶¶55-65).

---

[3] It was not the "condition" itself that required Mr. Doe to leave his home but rather the exercise of discretion, pursuant to the terms of the condition, by persons other than the Moving Defendants.

[4] Defendant Stanford is not actually named in the correspondence as the Chairwoman of the Parole Board; it is addressed to the "Parole Board". (See Complaint Ex. I at p. 1). Indeed, outside of plaintiffs' allegation that Defendant Stanford is the Chairwoman of the Parole Board, Defendant Stanford is never referred to in the Complaint or any of the exhibits thereto with regard to any of the conduct alleged to have deprived plaintiffs of their constitutional rights. (See Complaint ¶14).

On October 2, 2013, apparently in response to the correspondence,[5] Defendant Joseph Lima, Bureau Chief of the Manhattan VI Area Office ("Bureau Chief Lima"), advised plaintiffs that an investigation into the issues raised by the September 17, 2013 correspondence would be initiated by him pursuant to DOCCS' recently issued Parental Contact Protocol (the "Protocol"), and he would issue a determination pursuant thereto. (Complaint ¶¶6, 49-53, Ex. H at pp. 2-5).

The Complaint alleges that despite the fact that Defendant Lima indicated the investigation and determination would be expedited, it was not. However, the Complaint makes no allegation that Mr. Annucci or Ms. Stanford were made aware, by plaintiffs or otherwise, of any delay.

The Complaint does allege that Mr. Tracy, whose job is "legal advisor" <u>to the Board of Parole</u> and <u>not</u> as a supervisor of parole officers or their bureau chiefs or division heads, took a telephone call from a non-party State Assistant Attorney General at some unspecified time between January 30, 2014 and February 21, 2014 in which he was apparently told that the plaintiffs' counsel was inquiring about the status of Defendant Lima's investigation (Complaint ¶61). In response, Mr. Tracy telephoned Mr. Doe's counsel and advised her that he would contact Defendant Lima to determine the status of the investigation.[6] (*Id.*)  The Complaint does not allege that Mr. Tracy had any duty to act in response to the telephone call from the Assistant Attorney General or that he failed to act in a timely manner in response to that telephone call.

The inference from the Complaint is that Mr. Tracy made the telephone call to Mr. Lima as requested, albeit indirectly, by plaintiffs' counsel, and Defendant Lima issued his decision a short time later on February 21, 2014.  Defendant Lima's decision denied the request to overturn

---

[5] The reasonable inference from Defendant Lima reaching out to plaintiffs' counsel a short time after the letter was sent is that one or more of the Moving Defendants forwarded the letter or caused the letter to be forwarded to Bureau Chief Lima for investigation into the issues raised thereby and/or to issue a determination.

[6] The Exhibits to the Complaint also indicate that Mr. Tracy had been copied on an earlier letter to Mr. Lima (Complaint, Ex. K) but does not allege whether he received it and whether or how he or Mr. Lima responded.

the parole officer's decision prohibiting Mr. Doe from residing with his family.[7] The Complaint does not allege that Mr. Tracy or any of the Moving Defendants had any involvement or influence in Defendant Lima's decision-making process.

After learning of Defendant Lima's decision, plaintiffs commenced this action pursuant to 42 USC §1983 asserting specifically that the actions of "the Defendants" deprived them of the following rights:

1) The right to substantive due process of law under the Fourteenth Amendment to the U.S. Constitution (Complaint ¶¶66-73);

2) The right to intimate association under the First Amendment to the U.S. Constitution (Complaint ¶¶74-80); and

3) The right to procedural due process under the Fourteenth Amendment to the U.S. Constitution (Complaint ¶¶81-88).

The factual basis for the first two claims for relief propounded by plaintiffs is that the parole officers "on the ground" applied the Special Condition of parole to prohibit Mr. Doe from living with his wife, underage daughter, and infant son in violation of all of his constitutional rights. The factual basis for the third claim for relief is that "the Defendants" failed to provide plaintiff John Doe with an opportunity to challenge the imposition of that parole condition at a meaningful time and in a meaningful manner.

Before setting forth the points and authorities in support of the motion, it is important to explain the statutory structure of DOCCS and the Board of Parole and the statutory roles of the Moving Defendants.

---

[7] Bureau Chief Lima's determination was based on "a thorough review of all information submitted by the subject's attorney and the Parole Officer's intensive investigation"; basing his determination in part on the fact that "[w]hile the attorneys have submitted several sex offender treatment provider [sic] who support the subject,…none of these providers contacted the victim as was done by the Parole Officer in this case." (Complaint ¶62, Ex. L).

**DOCCS**

The Department of Corrections and Community Supervision ("DOCCS") is established pursuant to New York Correction Law §5(1). DOCCS has the responsibility to "supervise inmates released to community supervision" (N.Y. Correct. Law §201).

**Defendant Anthony Annucci**

Mr. Annucci is Acting Commissioner and as such, is the head of the DOCCS (*Id.*) and is its Chief Executive Officer (N.Y. Correct. Law §5[2]). He is also the "appointing authority" for all employees of the DOCCS (N.Y. Correct. Law §7[2]), including parole officers (N.Y. Correct. Law §§7[4] and 10).

Commissioner Annucci has the statutory authority to "delegate any of his...power to or direct any of his...duties to be performed by a deputy commissioner or a head of a division or bureau of [DOCCS]." N.Y. Correct. Law §7(3). Defendant Hogan "oversees the Manhattan VI Area Office of the New York State Division of Parole" (Complaint ¶65) and as such, is "a head of a division" to whom Commissioner Annucci may delegate his powers and duties. Defendant Lima "is the Bureau Chief to the Manhattan VI Area Office" (Complaint ¶16) and as such, is the head of a bureau to whom Commissioner Annucci may delegate his powers and duties. Mr. Annucci, as Commissioner, is several levels removed from the level at which the alleged constitutional violation occurred.

**The Board of Parole**

The Board of Parole, while within DOCCS, is independent and autonomous from Commissioner Annucci. N.Y. Exec. Law §259-b(1). Members of the Board of Parole are <u>not</u> appointed by Commissioner Annucci but rather by the Governor (N.Y. Exec. Law §259-b[1]), and the "Chairman" is also "designated" by the Governor. (N.Y. Exec. Law §259-b[3]).

**Defendant Tina Stanford**

Ms. Stanford is the Chairwoman (Complaint ¶14) of the Board of Parole. Ms. Stanford, like the other Board members, has one vote on Board decisions when a quorum is present (N.Y. Exec. Law §259-b[7]).

The Board of Parole and Chairwoman Stanford, as one of its fourteen (14) current members, has limited powers and duties (N.Y. Exec. Law §259-c); in particular, neither the Board nor Ms. Stanford as Chairwoman appoint or supervise parole officers, division heads or bureau chiefs of DOCCS. *See id.*

**Defendant Terrence X. Tracy**

Mr. Tracy is "Counsel for the Board of Parole" (Complaint ¶17). The Board has statutory power to appoint him "as its legal advisor" (N.Y. Exec. Law §259-c[17]) (emphasis supplied) and has done so. He reports to the Board of Parole. (*Id.*) Mr. Tracy has the duties of a lawyer for the Board and has no statutory power to be a supervisor of any of the DOCCS employees identified in the Complaint or to direct their conduct.

## POINT I

### PLAINTIFFS HAVE FAILED TO PLEAD FACTS SUFFICIENT TO STATE A CLAIM AGAINST THE MOVING DEFENDANTS.

**A. Standard under F.R.C.P. 12(b)(6)**

A plaintiff must plead sufficient factual allegations "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In order to meet the burden of establishing "facial plausibility", a plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678. "A pleading that offers

'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do." *Id. quoting Twombly*, 550 U.S. at 555. While these standards "do[] not require heightened fact pleading of specifics, it does require enough facts to 'nudge plaintiffs' claims across the line from conceivable to plausible.'" *In re Elevator Antitrust Litg.*, 502 F.3d 47, 50 (2d Cir. 2007). This is "not akin to a probability requirement," but rather "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678; *Howard v. City of New York*, Nos. 12 Civ. 4069 (PAE) (JCF) et al., 2012 WL 7050623, at *2 (S.D.N.Y. Dec. 20, 2012) ("Where the complaint's factual allegations permit the court to infer only that it is possible, but not plausible, that misconduct occurred, the complaint fails to meet the minimum standard.").

As detailed in this Point (and under Point II, *infra*), plaintiffs' Complaint cannot, as to these Moving Defendants, satisfy the minimal standards of §1983 liability.

**B.  Section 1983**

Plaintiffs bring their claims pursuant to 42 U.S.C. §1983. Section 1983 itself "creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985).  "To state a claim under Section 1983, a plaintiff must allege facts indicating that some official action has <u>caused</u> the plaintiff to be deprived of his or her constitutional rights." *Colombo v. O'Connell,* 310 F.3d 115, 117 (2d Cir. 2002) (emphasis supplied).

**C.  Lack of Personal Involvement**

Not only must a plaintiff bringing a claim under §1983 allege that he/she has been deprived of his/her constitutional rights, the plaintiff must also plead the "personal involvement of defendants in the alleged constitutional deprivations." *Farid v. Ellen*, 593 F.3d 233, 249 (2d Cir. 2010); *see also, Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable

to…§1983 suits, the plaintiff must plead that <u>each Government-official defendant, through the official's own individual actions</u>, has violated the Constitution.") (emphasis supplied). As this Court has recognized, in order to find that a particular defendant deprived a plaintiff of his constitutional rights, that defendant's act or omission must be the "proximate cause of the claimed violation." *Vogelfang v. Capra*, 889 F. Supp. 2d 489, 500 (S.D.N.Y. 2010), *citing Ross v. Westchester County Jail*, No. 10 Civ. 3937 (DLC), 2012 WL 86467, at *9 (S.D.N.Y. Jan. 11, 2012); *see also*, *Brown v. Coughlin*, 758 F. Supp. 876, 881 (S.D.N.Y. 1991) (There must be "a sufficient causal connection between the act or omission of <u>each separate defendant</u> and any injury or damage suffered by plaintiff") (emphasis supplied). Since many allegations refer merely to "the Defendants" (*see e.g.,* Complaint ¶¶68-73, 76-80, 83-88) in the conjunctive, they are insufficient to establish liability against any of the Moving Defendants. *See, e.g. Pearce v. Labella*, 473 Fed. Appx. 16, 20 (2d Cir. 2012); *Bertuglia v. City of New York*, 839 F. Supp. 2d 702, 723 (S.D.N.Y. 2012); *Thomas v. Venditto*, 925 F. Supp. 2d 352, 363 (E.D.N.Y. 2013).

The Complaint simply does not allege that the Moving Defendants were the actors "on the ground" who exercised discretion to apply the Special Condition in the manner that plaintiffs allege deprived them of their constitutional rights.[8]  As such, the pleading against these Moving Defendants can only be reviewed from the perspective of their status as high-ranking officials within or associated with DOCCS (Annucci) and the independent and autonomous Parole Board (Stanford and Tracy).

As detailed in the Preliminary Statement (pp.2-3 *supra*), the very few allegations that even reference these Moving Defendants are: 1) they are high-ranking officials; and 2) they were sent correspondence from plaintiffs' counsel and (as to Mr. Tracy) relayed the plaintiffs'

---

[8] To the extent the plaintiffs may assert that their allegations concerning what "the Defendants" did encompasses these Moving Defendants, as set forth above, the law is well established that such allegations are plainly insufficient.

communications to the appropriate personnel. Accordingly, we look to the law regarding the limited avenues through which high-ranking officials or "supervisors" may be responsible for constitutional deprivations.

> In *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995), the Court stated:

> The personal involvement of a supervisory defendant may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Id.* Review of the allegations of the Complaint reveals <u>none</u> of the Moving Defendants have personal involvement as supervisors. Indeed, Ms. Stanford and Mr. Tracy are not even supervisors of those who made the decisions at issue, and are thus not subject to "supervisory liability". Commissioner Annucci is several supervisory levels removed from the actors.

1)    <u>The allegation that the Moving Defendants hold high-level positions</u>

Supervisory officials may not be held liable merely because they hold a position of high authority. *Styles v. Goord*, 432 Fed. Appx. 31, 33 (2d Cir. 2011); *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996). As this Court has recognized, it "is clear that mere linkage in the chain of command is insufficient to establish liability under §1983." *Vogelfang*, 889 F. Supp. 2d at 502. The bare allegations that Commissioner Annucci and Chairwoman Stanford hold their respective position of high authority are thus, by themselves, insufficient to establish liability.

While Commissioner Annucci is in the "chain of command", he is several levels removed from the parole officers and their supervisors "on the ground." Ms. Stanford and Mr. Tracy are not even in the same "chain of command" as the parole officers and supervisors "on the ground"

11

and are not their "supervisors". Thus, the allegations regarding the Moving Defendants' positions of high authority fail to set forth a basis for liability.

2)      The allegations that plaintiffs' counsel sent letters to these Moving Defendants

The only other allegations in which any of the Moving Defendants are mentioned are in connection with the plaintiffs' counsel's transmission of communications to them.

a)      Receiving and referring letters to appropriate personnel for action/response does not create Section 1983 liability

The Second Circuit has held that a DOCS Commissioner who referred letters from a prisoner alleging unconstitutional conduct to a subordinate for investigation was not liable under §1983. *Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997); *see also, Ortiz-Rodriguez v. New York State Dep't of Correctional Services*, 491 F. Supp. 2d 342, 347 (N.D.N.Y. 2007) (referring communications down the chain of command is insufficient personal involvement); *Vega v. Artus*, 610 F. Supp. 2d 185, 199 n.13 (N.D.N.Y. 2009) (collecting authority supporting that "[p]risoner supervisors are entitled to refer letters of complaint to subordinates, and rely on those subordinates to conduct an appropriate investigation, without rendering the supervisors involved in the constitutional violations alleged in the letters of complaint").

This Court in *Vogelfang*, 889 F. Supp. 2d at 502, and other Courts in this Circuit have long held that the allegation of a transmittal of a letter complaining about conditions of confinement is insufficient to establish a claim upon which relief may be granted. *See, e.g. Vega*, 610 F. Supp. 2d at 198-99; *Rivera v. Fischer*, 655 F. Supp. 2d 235, 238 (W.D.N.Y. 2009).[9] Since

---

[9] The Moving Defendants note that the receipt of correspondence theory of liability would <u>not</u> be proceeding on the first or third avenues of supervisory liability set forth in *Colon*, i.e., that the defendant participated directly in the constitutional violation alleged or that they created a policy or custom under which the unconstitutional practices occurred. The question of whether the other *Colon* avenues of liability remain "good law" after the Supreme Court's Opinion in *Iqbal* has yet to be determined by the Second Circuit. However, several District Judges within the Southern District have held that the Supreme Court in *Iqbal*, by imposing an "active conduct" requirement for supervisory liability under §1983, abrogated all but the first and third avenues of supervisory liability articulated in *Colon. See e.g., Hollins v. City of New York*, No. 10 Civ. 1650 (LGS), 2014 WL 836950, at *13 (S.D.N.Y. March

these decisions, the Second Circuit has decided *Grullon v. City of New Haven*, 720 F.2d 133 (2d Cir. 2013) which, some have asserted, call these decisions into question. However, when properly analyzed and as pertinent here, it does not call the validity of these decisions into question in the least.

In *Grullon*, the defendant Warden made a motion to dismiss an inmate's *pro se* complaint. In opposition to the Warden's motion to dismiss, the *pro se* plaintiff-inmate submitted a letter that he alleged he sent to the Warden complaining about conditions and alternatively requested leave to replead his complaint against the Warden based upon that letter. The Court affirmed the District Court's dismissal of the complaint but reversed the District Court's denial of the *pro se* plaintiff's request to replead stating that the *pro se* plaintiff could possibly establish a claim for relief based upon the letter.

*Grullon* is readily distinguishable from this case. *Grullon is* explicitly grounded in the more forgiving pleading standards afforded *pro se* litigants (*id.* at 140-41)—standards not applicable in this case. (*Id.*) More importantly, *Grullon* does not stand for the proposition that a plaintiff who alleges, without more, that he sent a letter states a plausible claim for relief. All that *Grullon* stands for is that a *pro se* inmate should be given a second opportunity to make allegations regarding the action taken in response to such a letter. Nothing in *Grullon* suggests that the law established in *Sealey v. Giltner*, 116 F.3d 47—that there is no Section 1983 liability for directing a letter to appropriate personnel for investigation or response—has changed. Likewise, nothing in *Grullon* calls into question the requirement that in order to state a claim

---

13, 2014); *Joseph v. Fischer*, No. 08 Civ. 2824 (PKC)(AJP), 2009 WL 3321011, at *14 & n.6 (S.D.N.Y. Oct. 8, 2009); *Bellamy v. Mount Vernon Hosp.*, No. 07 Civ. 1801 (SAS), 2009 WL 1835939, at *6 (S.D.N.Y. June 26, 2009).

The Moving Defendants respectfully submit that this Court should not have to reach the question of whether the second, fourth and/or fifth *Colon* avenues of supervisory liability remain valid in light of *Iqbal's* "active conduct" requirement as the paucity of facts pled should lead the Court to dismiss the Complaint even if the second and/or fifth *Colon* avenues of supervisory liability remain valid.

upon which relief may be granted under §1983, a plaintiff cannot rely upon the mere allegation that he sent a letter complaining about allegedly unconstitutional conditions. To state a plausible claim for relief, a §1983 plaintiff must plead that the response to the letter was insufficient in a constitutional sense.

Here, these non-*pro se* plaintiffs have not alleged any shortcoming with respect to the response to the September 17, 2013 letter.  Indeed, the reasonable inference from the pleading and the temporal proximity between the September 17, 2013 letter and the resultant initiation of the investigation by Defendant Lima (October 2, 2013) is that one or more of the Moving Defendants did take action by referring the September 17, 2013 letter to Bureau Chief Lima for investigation pursuant to the Protocol (Complaint ¶¶52-53). As to Mr. Tracy's receipt of the telephone call, plaintiffs themselves plead that Mr. Tracy took the step of making inquiry of Mr. Lima, which again resulted in what the plaintiffs wanted—a decision—albeit not the decision they wanted. Hence, plaintiffs cannot establish the liability of these Moving Defendants for the constitutional violation they allege.

Additionally, because Mr. Tracy as Counsel to the Board of Parole, and Ms. Stanford as Chairwoman of the Board of Parole, were not the supervisors of the parole officers or parole supervisors who were making the decision, these Moving Defendants had no affirmative duty to act in response to the letter(s) or the telephone call and as such, could not be liable for any allegation that they failed to act. *See e.g.*, *Musso v. Hourigan*, 836 F.2d 736 (2d Cir. 1988).

Most importantly, in this non-*pro se* Complaint, plaintiffs do <u>not</u> allege that <u>these Moving Defendants</u> failed to take timely action upon receipt of the letter or, as to Counsel Tracy, after receipt of the telephone call from the Assistant Attorney General. As such, even if the Defendants Stanford and Tracy were supervisors with a duty to act, and even if Commissioner

Annucci was aware of the plaintiffs' situation after the September 17, 2013 letter was referred to Defendant Lima—a fact not alleged anywhere—plaintiffs do not allege that they suffered any constitutional deprivation or damages as a result of any action or inaction <u>by any of these Moving Defendants</u>.

Plaintiffs have failed to allege the personal involvement of any of the Moving Defendants in alleged constitutional deprivation under any arguable applicable theory of supervisory liability[10] and as such, the Complaint should be dismissed for failure to state a claim upon which relief may be granted.

> b) <u>The second, fourth and fifth avenues of liability set forth in *Colon* is no longer a basis for supervisory liability</u>

To the extent this Court believes that the Complaint sets forth sufficient personal involvement of these Moving Defendants under the second, fourth or fifth avenues of liability under *Colon*, defendants respectfully submit that they are no longer viable avenues of liability after *Iqbal* for the reasons stated in *Bellamy v. Mount Vernon Hosp.*, No. 07 Civ. 1801 (SAS), 2009 WL 1835939, at *6 (S.D.N.Y. June 26, 2009). As such, the Complaint should be dismissed as against these Moving Defendants for failure to state a claim upon which relief may be granted.

## POINT II

## THE MOVING DEFENDANTS ENJOY ABSOLUTE AND QUALIFIED IMMUNITY FOR THEIR ALLEGED CONDUCT

The personal immunities, whether absolute or qualified, of defendants under §1983 may be raised on an F.R.C.P. 12(b)(6) motion. *Shmueli v. City of New York*, 424 F.3d 231, 236 (2d Cir. 2005) (absolute immunity); *McKenna v. Wright*, 386 F.3d 432, 435 (2d Cir. 2004) (qualified immunity).

---

[10] Again, Ms. Stanford and Mr. Tracy were not supervisors in the chain of command of the parole officers, and Commissioner Annucci, while a supervisor in the chain of command, is several levels removed.

It is important to point out at the outset that, as is evident from Point I, these Moving Defendants do not believe that sufficient facts have been asserted to establish their personal involvement in the alleged violations. However, to the extent the Complaint is read to include these moving Defendants as among the persons to whom plaintiffs refer throughout the Complaint as "the Defendants" and are thus alleged to have participated in either the decision to impose the Special Condition or the decision to apply it in a way that plaintiff claims led to the alleged constitutional deprivation, these Moving Defendants are protected from suit by the respective immunity doctrines. By making this argument, these Moving Defendants do not undercut the force with which they assert that the Complaint is deficient for failing to allege their personal involvement in the alleged acts.

## A. Absolute Immunity under §1983 Bars Claims Against the Moving Defendants

"Absolute immunity defeats a suit at the outset, so long as the official's actions were within the scope of the immunity." *Imbler v. Pachtman*, 424 U.S. 409, 419 n.13 (1975). This immunity reaches agency officials, even though they are not judges, when they engage in actions that are the functional equivalent of judicial conduct protected by absolute immunity. *Montero v. Travis*, 171 F.3d 757, 759-761 (2d Cir. 1999); *Scotto v. Alemenas*, 143 F.3d 105, 110-113 (2d Cir. 1998). Executive employees enjoy absolute immunity "when considering and deciding parole questions" since "this function is comparable to that of judges." *Mayorga v. Missouri*, 442 F.3d 1128, 1131 (8th Cir. 2006); *Montero*, 171 F.3d at 761 (holding "that parole board officials, like judges, are entitled to absolute immunity from suit for damages when they serve a quasi-adjudicative function in deciding whether to grant, deny or revoke parole"); *see also* (as to Mr. Tracy), *Walter v. Torres*, 917 F.2d 1379, 1381, 1383-1385 (5th Cir. 1991) (general counsel of

Texas Board of Pardons and Paroles entitled to immunity against claims involving parole revocations as afforded to Board members themselves).

Specifically, "[s]pecial conditions [of parole] may be the product of an adjudicative process when they form part of the decision to grant or deny parole." *Farrell v. Burke*, No. 97 CIV. 5708 (DAB), 1998 WL 751695, at *4 (S.D.N.Y. Oct. 28, 1998); *see also LaBounty v. Coombe*, No. 95 CIV. 5592 (MBM), 1999 WL 177438, at *4 (S.D.N.Y. March 30, 1999) (holding absolute immunity extends to "parole officers engaged in the parole board's quasi-adjudicational function: making a parole decision in an individual case") (internal quotes omitted); *Stewart v. Smallwood*, No. 92 Civ. 4043 (SS), 1993 WL 77381, at *1 (S.D.N.Y. March 15, 1993); *cf. Eisman v. State*, 70 N.Y.2d 175, 184 (1987) ("[s]etting the conditions of release was properly recognized as a discretionary function within the State's absolute immunity, foreclosed from judicial review" because "[t]he acts of the corrections officials and parole supervisors in monitoring…[parolee's] release involved the kind of policy determination which are of a discretionary or quasi-judicial nature and therefore insulated from liability.") (internal quotes omitted).

Here, the Complaint, on its face, challenges the constitutionality of the purported imposition by "the Defendants" of the Special Condition (*see* Complaint ¶¶32, 83). The foregoing case law makes evident that to the extent any of the Moving Defendants is alleged to be among "the Defendants", absolute immunity protects them from liability because they would have functioned in a quasi-adjudicative role.

Further, absolute immunity serves the important goal of removing the fear-of-damages-liability factor from the decision-maker's balancing of the interests and weighing of the facts in determining whether, as in this example, the safety of the minor children in the house will be

17

compromised. These kinds of important public safety decisions should not be influenced by an overarching fear of potential personal financial ruin as a result of making the "wrong" decision.

Additionally, executive employees enjoy absolute immunity when they, akin to a judge assigning a case to another judge, they assign an administrative proceeding to a hearing officer. *Bracci v. Becker*, No. 1:11-cv-1473 (MAD/RFT), 2013 WL 123810, at *6 (N.D.N.Y. Jan. 9, 2013), *citing Martinez v. Winner*, 771 F.2d 424, 434 (10th Cir. 1985). To the extent that the Complaint asserts that one or more of the Moving Defendants deprived plaintiffs' constitutional rights by referring the case to Bureau Chief Lima for determination (*see* Complaint ¶¶52-53, 62), that is the functional equivalent of the assignment of a case, and such assignment is protected by absolute immunity under the foregoing precedents.

As a result, to the extent that the Complaint is alleging that the Moving Defendants engaged in these adjudicatory functions, it should be dismissed on absolute immunity grounds.

## B. The Moving Defendants Enjoy Qualified Immunity for Their Alleged Conduct

"Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012). This Court "may grant qualified immunity on the ground that a purported right was not 'clearly established' by prior case law, without resolving the more difficult question whether the purported right exists at all." *Reichle*, 132 S. Ct. at 2093, *citing Pearson v. Callahan*, 555 U.S. 223, 227 (2009).[11]

It not enough that the right allegedly violated is established in broad strokes under precedent. Rather, "the right allegedly established" must be established "in a particularized sense

---

[11] While the Moving Defendants dispute that plaintiffs' constitutional rights were violated, at this time, without issue being joined and discovery being held, this Court should not and need not reach this issue given the "usual reluctance" of Federal courts "to decide constitutional questions unnecessarily." *Reichle*, 132 S. Ct. at 2093, *citing Pearson*, 555 U.S. at 241.

so that the contours of the right are clear to a reasonable official." *Reichle*, 132 S. Ct. at 2094 (internal quotes and citation omitted). The Moving Defendants do not dispute that the generalized due process and associational rights asserted in the Complaint are well recognized in case law. However, the qualified immunity inquiry into whether those rights are clearly established "must be taken in light of the specific context of the case, not as a broad general proposition." *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Giles v. Repicky*, 511 F.3d 239, 244 (2d Cir. 2007) (whether a right is clearly established is "tied to the specific facts and context of the case."). At bottom, the Court must "determine whether conduct alleged violated a clearly established constitutional right about which an objectively reasonable person would have known." *Hilton v. Wright*, 673 F.3d 120, 126 (2d Cir. 2012).

Here, assuming *arguendo* that the Moving Defendants, in fact, engaged in the conduct that allegedly deprived plaintiffs of their constitutional rights (*but see* Point I, *supra*), "reasonable officials could disagree whether [the Moving Defendants] violated [plaintiffs'] constitutional rights." *Bellezza v. Holland*, No. 09 Civ. 8434 (PAE), 2012 WL 5426384, at *10 (S.D.N.Y. Nov. 7, 2012). This is because plaintiff John Doe's parole from New York state penitentiary "is release from prison, before the completion of sentence, on the condition that the prisoner abide by certain rules during the balance of the sentence." *Samson v. California*, 547 U.S. 843, 850 (2006), *quoting Morrissey v. Brewer*, 408 U.S. 471, 477 (1972). New York, like other states, is "willing to extend parole only because it is able to condition it upon compliance with certain requirements." *Samson*, 547 U.S. at 850, *quoting Pennsylvania Bd. of Probation and Parole v. Scott*, 524 U.S. 357, 265 (1998). Because New York's scheme of parole places full discretion in the Parole Board to grant parole, it "is not one that creates in any prisoner a

legitimate expectancy of release." *Barna v. Travis*, 239 F.3d 169, 171 (2d Cir. 2001); *see* N.Y. Executive Law §259-i(2)(c)(A); 9 N.Y.C.R.R. Part 8002.

Then, once a New York state prisoner is released on parole, he/she only retains a "conditional liberty properly dependent on observance of special parole restrictions" imposed in the discretion of the Parole Board or parole officers. *Morrissey*, 408 U.S. at 481-482 (1972); *see* 9 N.Y.C.R.R. Part 8003. Indeed, if a parolee "had...remained an inmate, his familial relationships could have been curtailed without infringing upon his constitutional rights." *Daniels v. Ralph*, No. 10 CV 884, 2012 WL 2120591, at *8 (W.D.N.Y. June 11, 2012); *Baker v. Welch*, No. 03 Civ. 2267 (JSR)(AJP), 2003 WL 22901051, at *11 (S.D.N.Y. Dec. 10, 2003) ("[a]lthough no longer physically in prison, the parolee is constructively still a prisoner.").

In light of the foregoing, district courts in New York have said over and over again that New York parolees "have no constitutionally protected liberty interest in being free from special conditions of release." *Maldonado v. Fischer*, No. 11-CV-1091Sr, 2012 WL 4461647, at *4 (W.D.N.Y. Sept. 24, 2012); *Daniels*, 2012 WL 2120591 at *8; *Walker v. Mattingly*, No. 09-CV-845-JTC, 2012 WL 1160772, at *6-8 (W.D.N.Y. April 5, 2012); *Boddie v. Chung*, No. 09 CV 04789 (RJD)(LB), 2011 WL 1697965, at *1 (E.D.N.Y. May 4, 2011); *Cooper v. Denison*, No. 08-CV-6238 CJS, 2011 WL 1118685, at *11 (W.D.N.Y. March 24, 2011); *Cusamano v. Alexander*, 691 F. Supp. 2d 312, 319 (N.D.N.Y. 2009); *quoting Pena v. Travis*, No. 01 Civ. 8534 (SAS), 2002 WL 31886175, at *13 (S.D.N.Y. Dec. 27, 2002); *McCloud v. Kane*, 491 F. Supp. 2d 312, 317 (E.D.N.Y. 2007).

Neither the Supreme Court nor Second Circuit has invalidated the imposition or enforcement of a New York parolee's special condition of parole on constitutional grounds. When the Second Circuit has faced such a challenge, it has rejected it. *See, e.g. Farrell v. Burke*,

449 F.3d 470, 482, 484-499 (2d Cir. 2006) (rejecting facial and as-applied due process and First Amendment void-for-vagueness and facial overbreadth challenges to a special condition barring a New York parolee from possessing pornographic materials). When the Western District confronted the application of the individual right to intimate association with family members to a condition of parole compelling the parolee to live in a sex offender residence, it looked to law outside of the Second Circuit for guidance in rejecting the constitutional claim. *See Daniels*, 2012 WL 2120591 at *9. Reasonable government officers can therefore disagree under Supreme Court and Second Circuit precedent whether the exercise of discretion under the Special Condition by the "on the ground" parole officers in a way that removes the parolee from the home would violate plaintiffs' due process and First Amendment rights.

The Moving Defendants acknowledge that there are multiple decisions of the Second Circuit utilizing a due process analysis to invalidate special conditions of <u>supervised release</u> of Federal inmates. *See, e.g., U.S. v. McGeoch*, 546 Fed. Appx. 44, 48-49 (2d Cir. 2013) (requiring individualized inquiry prior to restricting defendant's contact with sons); *U.S. v. McLaurin,* 731 F.3d 258, 261-264 (2d Cir. 2013); *U.S. v. Reeves*, 591 F.3d 77, 80-83 (2d Cir. 2010). In particular, in *U.S. v. Meyers*, the Second Circuit recognized such an analysis applied in the context of a condition of supervised release that on its face required a Federal prisoner on supervised release to obtain authorization from the probation office before spending time alone with his son. 426 F.3d 117, 122, 125-126 (2d Cir. 2005).

However, <u>none</u> of these cases were applied to New York parolees. Rather, the conditions of release at issue were only in Federal court because of the Federal courts' sentencing authority in imposing conditions of supervised release and their mandate via 18 U.S.C. §3583(d)(2) that special conditions "involve[] no greater deprivation of liberty than is reasonably necessary to

achieve the purposes of sentencing." *McGeoch*, 546 Fed. Appx. at 48. They specifically apply in that analysis the "statutory purposes of sentencing" in the Federal system, *Meyers*, 426 F.3d at 124, whereas issues concerning or arising out of New York State's statutory scheme for determining parole release "are matters for consideration by the state courts." *Boothe v. Hammock*, 605 F.2d 661, 664-65 (2d Cir. 1979). These cases fail to provide New York state governmental officials a "particularized sense" of "the contours of the right[s]" asserted by plaintiffs as applied to a facial or as-applied challenge to a New York condition of parole in light of the purposes of parole within the New York criminal justice system. *See, Reichle*, 132 S. Ct. at 2094.

This is particularly so given the in-kind distinctions between the Federal system of conditional supervised release and New York's parole scheme. Plaintiff John Doe was on parole supervision pursuant to N.Y. Penal Law §70.40, not post-release supervision under N.Y. Penal Law §70.45 which is the New York analogue to Federal conditional supervised release. Under both the Federal and New York systems of post-release supervision, the term of supervised release outside prison is additional court-imposed punishment on top of a prison sentence. *See Samson*, 537 U.S. at 850 ("Federal supervised release,…is meted out in addition to, not in lieu of, incarceration"), *quoting United States v. Reyes*, 283 F.3d 446, 461 (2d Cir. 2002); N.Y. Penal Law §70.45(1).

On the other hand, the imposing of special conditions for the grant of parole under N.Y. Penal Law §70.40 is inexorably connected with the quasi-judicial determination of the New York executive branch to let an inmate continue his judicially imposed prison term outside of prison. *See* N.Y. Penal Law §70.40(1)(a)-(b); N.Y. Exec. Law §259-c(1), (2); 9 N.Y.C.R.R. §§8003.1(c), 8003.2, 8003.3. The "discretionary imposition of special conditions" under New

York's parole scheme "is not subject to judicial review in the absence of a showing that the board or its agents acted in an arbitrary and capricious manner" with "[r]eview of the conditions of parole generally matters for state courts." *Maldonado*, 2012 WL 4461647 at *3 (internal quotes and citations omitted); *Boddie*, 2011 WL 1697965 at *2; *Pena*, 2002 WL 31886175 at *9.

Lastly, <u>none</u> of these cases speak to supervisory liability of the Moving Defendants for the imposition and enforcement of conditions of supervised release by the "parole officers" who are charged with investigating facts on the ground and making determinations that are ultimately appealable administratively. The conduct of the Moving Defendants has not been held by the Supreme Court or Second Circuit to be violative of the Constitution. It is certainly not clearly established that a high-level DOCCS supervisor violates a clearly established constitutional right by referring fact-intensive decisionmaking to those subordinates whose job it is to make such decisions.

Based on the foregoing, the Moving Defendants could not have reasonably believed their alleged conduct violated plaintiffs' constitutional rights. Therefore, they enjoy qualified immunity for their conduct and should be dismissed from this action.

## POINT III

## THE CLAIMS ASSERTED AGAINST THE MOVING DEFENDANTS IN THEIR OFFICIAL CAPACITIES ARE MOOT

The Moving Defendants understand that they have been named in their official capacities in connection with the injunctive relief sought—barring the enforcement of the Special Condition against plaintiff John Doe (Complaint ¶6 & p.23).[12] While injunctive relief is certainly permitted in §1983 suits plaintiffs' claims for prospective injunctive relief against the Moving Defendants are moot because the Special Condition of plaintiff John Doe's parole has been modified by Regional Director Hogan to allow plaintiff John Doe to reside with his family and now provides plaintiff John Doe "unrestricted contact with his two biological children." (Affidavit of Mark T. Walsh sworn to June 30, 2014 ["Walsh Aff."] ¶¶4-5; Dkt Nos. 52, 56-57). This is the decision sought by plaintiffs before and after commencing this action. As a result of Regional Director Hogan's determination, there is no alleged ongoing or future violation to be enjoined.[13]

Accordingly, this Court lacks subject matter jurisdiction over plaintiffs' claims against the Moving Defendants in their official capacities for prospective injunctive relief; these claims should be dismissed pursuant to F.R.C.P. 12(b)(1). *Doyle v. Midland Credit Management, Inc.*, 722 F.3d 78, 80 (2d Cir. 2013).

---

[12] To the extent that plaintiffs assert claims for money damages against the Moving Defendants in their official capacities as New York state officials, that end-around of state sovereign immunity has long been barred. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 70-71 (1989). If plaintiffs do seek money damages against the Moving Defendants in their official capacities, those claims must be dismissed under F.R.C.P. 12(b)(1) because the Court lacks subject-matter jurisdiction over claims it "lacks the…constitutional power to adjudicate." *Marakova v. U.S.*, 201 F.3d 110, 113 (2d Cir. 2000).

[13] Moreover, injunctive relief can lie against state officials only if they have "some connection with the enforcement" of the Special Condition against plaintiff John Doe. *In re Dairy Mart Convenience Stores, Inc.*, 411 F.3d 367, 372-73 (2d Cir. 2005), *quoting Ex Parte Young*, 209 U.S. at 154. As previously described, Mr. Tracy, as Counsel to the Board, has no such enforcement authority as he is does not have supervisory authority over parole officers and is not a member of the Board of Parole. Therefore the claim for prospective relief against him must be dismissed under F.R.C.P. 12(b)(6) because plaintiffs have not plausibly stated a claim for prospective relief against him.

## CONCLUSION

**FOR ALL THE FOREGOING REASONS, PLAINTIFFS' MOTION
PURSUANT TO F.R.C.P. 12(b) SHOULD BE GRANTED AND THE
COMPLAINT DISMISSED AS AGAINST DEFENDANTS ANTHONY ANNUCCI,
TINA STANFORD AND TERRENCE X. TRACY IN BOTH THEIR
INDIVIDUAL AND OFFICIAL CAPACITIES.**

DATED:        Albany, New York          Respectfully submitted,
             June 30, 2014

                                        **GLEASON, DUNN, WALSH & O'SHEA**
                                        *Attorneys for Defendants Anthony Annucci,*
                                        *Tina Stanford & Terrence X. Tracy*

                                        By _____
                                             MARK T. WALSH, ESQ.
                                             Bar Roll No. MW5155
                                             DANIEL A. JACOBS, ESQ.
                                             Bar Roll No. DJ1082
                                        Office and P.O. Address
                                        40 Beaver Street
                                        Albany, NY 12207
                                        (518) 432-7511

25