UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- x

JOHN DOE, et al.

                                  Plaintiffs,    14-CV-2953 (PAE)

           -against-          **Joint Statement of Undisputed Facts**

ANTHONY ANNUCCI, et al.

                         Defendants.

------------------------------------------------------------------- X

       Plaintiffs John Doe, Jane Doe, and M.S. (together, "Plaintiffs") and Defendants Joseph Lima ("Lima"), Richard Rosado ("Rosado"), James Cappiello ("Cappiello"), Simon Valerio ("Valerio"), and Emily Scott ("Scott") (together, "Defendants," and together with Plaintiffs, the "Parties"), by and through their respective attorneys, respectfully submit this joint statement of undisputed facts.  The Parties acknowledge that because there are additional facts that are not included herein, this joint statement is not to be construed as a complete recitation of all of the facts relevant to this action.  The Parties do not stipulate that the facts set forth herein are relevant or material to any legal issue that any of them may present to the Court for consideration.

**The Parties**

       1.      Plaintiff John Doe is the biological father of M.S. and husband of Plaintiff Jane Doe.  He was born in 1965.

       2.      Plaintiff Jane Doe is the biological mother of M.S. and wife of John Doe. She was born in 1971.

3.      Plaintiff M.S. is the son of John and Jane Doe.  He was born in September 2012.

4.      Defendant Joseph Lima ("Lima") is a former Bureau Chief of the Manhattan VI Area Office of the New York State Department of Corrections and Community Supervision ("DOCCS").  In his capacity as a Bureau Chief of the Manhattan VI Area Office, Lima was generally responsible for the supervision of approximately three (3) Senior Parole Officers and between seventeen (17) to twenty-five (25) Parole Officers who supervised parolees assigned to the Manhattan VI Office.   The responsibilities of the Parole Officers within the Manhattan VI Office included compliance with the terms and conditions of parole and the standards of parole supervision.  Lima was the Bureau Chief of the Manhattan VI Area Office while John Doe was supervised by the Manhattan VI Office.

5.      Defendant Richard Rosado ("Rosado") is a Bureau Chief at DOCCS.  Rosado was a Senior Parole Officer at the Manhattan VI Area Office while John Doe was supervised by the Manhattan VI Office.  In his capacity as a Senior Parole Officer in the Manhattan VI Office, Rosado was responsible for the supervision of Parole Officers who supervised parolees assigned to the Manhattan VI Office.  From in or about June 2013 until in or about March 2014, Rosado was the Senior Parole Officer assigned to oversee the supervision of John Doe, although he also was involved in decisions regarding John Doe's supervision at least beginning in October 2012.

6.      Defendant James Cappiello ("Cappiello") is Supervisor at the U.S. Marshals Regional Fugitive Task Force.  Cappiello was a Senior Parole Officer at the Manhattan VI Area Office from in or about September 2012 until in or about April 2013,

during which time he was the Senior Parole Officer assigned to oversee the supervision of John Doe. In his capacity as a Senior Parole Officer in the Manhattan VI Office, Cappiello was responsible for the supervision of Parole Officers who supervised parolees assigned to the Manhattan VI Office.

7.     Defendant Simon Valerio ("Valerio") is a Parole Officer at DOCCS. Valerio was assigned to supervise John Doe in his capacity as a Parole Officer in the Manhattan VI Office on or about September 19, 2013 until on or about December 16, 2013.

8.     Defendant Emily Scott ("Scott") is a Parole Officer at DOCCS. Scott was assigned to supervise John Doe in her capacity as a Parole Officer in the Manhattan VI Office on or about September 17, 2012 until on or about September 19, 2013.

9.     The Manhattan VI Office was a specialized bureau that supervised only sex offender and mental health parolees.

### **Doe Family Background**

10.     Beverly Martin ("Martin") is John Doe's ex-wife. They were married in 1988 and divorced in November 2005.

11.     John and Jane Doe were married on September 22, 2007.

12.     John Doe is the father of eight children with five women: four with his ex-wife Martin; one with his current wife Jane Doe; and three with three other women. He has two daughters who were born in 1986; a son who was born in 1990; a daughter who was born in 1993; a son who was born in 1997; a daughter who was born in 1998; a daughter who was born in 1999 (referred to herein as "L.S"); and M.S., who was born in 2012.

13.     Since in or about September 2013, John Doe has worked full-time for a Manhattan-based company that provides live and artificial foliage for special events.

14.     Jane Doe is the mother of two children—a daughter who was born in 1990; and M.S.

15.     Since 2006, Jane Doe has worked as a legal secretary for a large Manhattan law firm.

### John Doe's Criminal Conviction

16.     On October 18, 2004, John Doe was found guilty after a jury trial in New York State Supreme Court, Bronx County, of one count of Rape in the second degree, one count of Sodomy in the second degree, and one count of Endangering the Welfare of a Child, and on May 11, 2005, he was sentenced to consecutive terms of imprisonment in State prison for 3 ½ to 7 years and 2 to 6 years (the "2005 criminal case").  John Doe served over eight years of that sentence.

17.     The complaining witness in John Doe's 2005 criminal case was Martin's niece.  She testified that John Doe engaged in vaginal and oral sex with her in 2002 and 2003, when she was 13 and 14 years old and while she was living with John Doe, Martin, and their four children.

18.     John Doe's 2005 criminal conviction is currently on direct appeal.

19.     While incarcerated, John Doe successfully completed DOCCS's Sex Offender Counseling and Treatment Program and DOCCS's Aggression Replacement Training.

20.    Prior to his release from prison, John Doe was classified by the Bronx Supreme Court as a SORA Level Two sex offender, and he thereafter registered in the NYS Sex Offender Registry.

**John Doe's Prior Criminal Convictions**

21.    On April 4, 1988, John Doe was convicted upon guilty plea of two counts of robbery in the first degree and sentenced to concurrent terms of six to twelve years in State prison.

22.    On January 22, 1981, John Doe was convicted upon guilty plea as a juvenile offender of robbery in the first degree and sentenced to 28 months to seven years in State prison.

23.    In connection with John Doe's arrest leading to his 1988 conviction, he provided law enforcement officers with his mother's maiden name as his last name and the year 1968, rather than 1965, as his year of birth, for the purpose of avoiding identification.

**The 2000 Domestic Incident**

24.    Sometime in the year 2000, John Doe shoved or pushed Martin during a scuffle and she fell to the ground.  As a result, Martin went to Lincoln Hospital to be checked by medical staff.

**Parole Supervision of John Doe**

25.    John Doe was released from prison to a parole supervision term of 4 years and 4 months on November 2, 2011.

26.    John Doe completed his parole supervision term on March 2, 2016.

27.     From his release from prison until March 2014, John Doe was supervised by the Manhattan VI Area Office of the New York State Division of Parole, located at 314 West 40th Street in Manhattan.   From March 2014 until the end of his parole supervision term in March 2016, John Doe was supervised by the Bronx II Area Office, located at 14 Bruckner Avenue in the Bronx.

28.     The Manhattan VI Area Office specializes in the supervision of parolees convicted of sexual offenses and those suffering from mental illness.

29.     Prior to John Doe's release, the Board of Parole imposed many parole conditions upon Doe.   One of the conditions stated: "I will have no contact with any person under the age of eighteen, without the written permission of the supervising parole officer."   A true and accurate copy of the Board of Parole imposed conditions, bates stamped DOCCS0017051 through 17055, is attached as Ex. A.

30.     Upon his release from prison on November 2, 2011, John Doe was referred to the Bellevue Men's Shelter for housing because his proposed residence with his wife was deemed by DOCCS to be noncompliant with the New York State Sexual Assault Reform Act ("SARA"); DOCCS determined that the proposed residence was located within 1000 feet of a school.   The following day, John Doe reported to his assigned parole officer, Joseph Rehal, at which time John Doe's conditions of release to parole supervision were read to him, he expressed understanding of the conditions, and curfew restrictions were imposed.

31.     In December 2011, John Doe and his wife proposed to DOCCS a different location in the Bronx to reside, and after it was approved by DOCCS, John Doe moved in with his wife at the residence in the Bronx.

32.     On December 6, 2011, John Doe filed a petition in Bronx Family Court requesting visitation with his daughter, L.S.  On February 1, 2012, the Bronx Family Court granted John Doe's petition for visitation with L.S., upon consent of his daughter's mother, John Doe's ex-wife, Martin.

33.     On April 3, 2012, John Doe requested permission from his Parole Officer, Joseph Rehal, to allow his wife's cousin and young child to stay at their residence for two nights.  The request was denied by Rehal, and Rehal counseled John Doe that children were not allowed in the apartment without his parole officer's prior permission.

34.     In or about May 2012, following the family court's order permitting John Doe visitation with L.S., John Doe's supervising parole officer at the time, Joseph Rehal, upon consultation with Senior Parole Officer Miguel Medina, permitted John Doe contact with L.S., pursuant to the terms of the family court's order.  Rehal was not aware of any incidents or harm to L.S. while Rehal was John Doe's supervising parole officer.

35.     On August 22, 2012, the Bronx Family Court issued a Final Order on Petition for Visitation on Consent awarding John Doe unsupervised visits with L.S.

36.     One of John Doe's parole conditions required that he participate in sex offender treatment.  DOCCS sent John Doe to the New York Center for Addiction Treatment Services ("NYCATS") to fulfill this condition.  John Doe enrolled on or about November 18, 2011.

37.     John Doe successfully completed the substance-abuse and sex-offender treatment programs at NYCATS on September 29, 2012.

38.     In or about February 2012, Jane Doe discovered that she was pregnant with John Doe's child.  On or about April 19, 2012, John Doe discussed with his parole

officer, Joseph Rehal, the possibility of his wife being pregnant and was counseled by Rehal regarding his sex offender restrictions.

39.     On September 17, 2012, Scott reviewed and updated John Doe's Parolee Chrono Report ("PCR").

40.     On September 25, 2012, Cappiello and Scott met to review John Doe's case and, among other things, discussed preparing the transfer of John Doe's case to the Bronx Parole Office, the county of his residence.

41.     On October 4, 2012, John Doe came to the Manhattan VI Office for an office report.  During the visit, John Doe was told by Scott, Rosado, and Cappiello that he was not permitted to reside with or otherwise have contact with his newborn son, M.S., based upon his Parole Board condition prohibiting contact with any person under the age of eighteen without the written permission of the supervising parole officer.  John Doe protested and explained that the Bronx Family Court had approved his petition for unsupervised visitation with his then 14-year-old daughter, L.S.  During the meeting, Scott, Rosado, and Cappiello did not ask John Doe any questions about his relationship with M.S. or otherwise seek input from John Doe before ordering that he not have contact with M.S.  John Doe was visibly upset at the October 4, 2012 meeting, and Scott thought that he might need emergency medical assistance.  Lima was not present for the October 4, 2012 discussion between Scott, Rosado, Cappiello, and John Doe that is referenced in this paragraph.

42.     During the October 4, 2012 meeting, Scott, at Cappiello's instruction, required Doe to sign a document containing additional conditions of parole.  The conditions were: "I must immediately leave [then-current address].  I am aware that I can

not have contact with any children under the age of 18 yrs old therefore residing with wife and new born is clearly a violation of my release conditions.  I must seek visitation order with regard to new born child [M.S.].  I am aware that I can not have contact with child until approval by Family Court and Parole Officer Scott."  A true and accurate copy of the additional conditions of parole signed October 4, 2012, bates stamped DOCCS0017073, is attached as Ex. B.

43.    At the October 4, 2012 meeting, Scott, Cappiello, and Rosado—based upon John Doe's Parole Board condition prohibiting contact with any person under the age of eighteen without the written permission of the supervising parole officer—did not consider permitting John Doe restricted contact with M.S. rather than no contact.  They also did not consider the decision subject to change at that time.

44.    Prior to the October 4, 2012 meeting, John Doe was aware of his Parole Board condition prohibiting contact with any person under the age of eighteen without the written permission of the supervising parole officer.

45.    Aside from being notified of his Parole Board condition prohibiting contact with any person under the age of eighteen without the written permission of the supervising parole officer, prior to the October 4, 2012 meeting, John Doe was not provided with any notice from any Defendant that he might be denied contact with M.S.

46.    Jane Doe was not contacted by any DOCCS personnel prior to, during, or after the October 4, 2012 meeting to ask if she supported parental contact between John Doe and M.S.

47.    On October 4, 2012, following the meeting with Scott, Cappiello, and Rosado, John Doe complained orally to Lima about not being allowed to have contact

with M.S.  This was the first time Lima had spoken to John Doe, although Lima had previously met on several occasions with John Doe's prior Parole Officer, Joseph Rehal, regarding John Doe's supervision.  Later on October 4, 2012, Lima spoke to Cappiello, Rosado, and Scott and told them that they had made the correct decision earlier that day based on John Doe's Parole Board condition prohibiting contact with any person under the age of eighteen without the written permission of the supervising parole officer.

48.     Cappiello's and Rosado's decision at the October 4, 2012 meeting to not permit contact between John Doe and M.S. was based on the fact that the Board of Parole had imposed a condition prohibiting contact with any person under the age of eighteen without the written permission of the supervising parole officer.

49.     On October 4, 2012, following the meeting with John Doe, Scott called Cornelia Krieger, Assistant Director at NYCATS.  Krieger stated that John Doe was extremely compliant, had maintained a 100-percent attendance rate at NYCATS, and had been assessed to be at a low risk of recidivism, with no indicators of reoffending.

50.     On October 5, 2012, John Doe filed a petition in Bronx Family Court seeking visitation with M.S.  Jane Doe, M.S.'s mother, consented to the petition.

51.     On October 6, 2012, John Doe showed Scott the Final Order issued by the Bronx Family Court granting unsupervised visitation with L.S.  Scott directed John Doe not to have any parental contact despite the Court order.  Also on October 6, 2012, John Doe told Scott that he filed a petition in Bronx Family Court seeking visitation with M.S.  Scott directed John Doe to produce all court-related information on his next report date, scheduled for October 11, 2012.

52.     On October 11, 2012, John Doe provided Scott with the court information for his petition in Bronx Family Court for visitation with M.S.  Scott took note of the next court date, which was October 30, 2012, and the name of the judicial referee overseeing the petition.  John Doe also provided Scott copies of the petition, as well as the Final Order granting unsupervised visitation with L.S. and a NYCATS letter of recommendation.

53.     On October 17, 2012, Scott visited Bronx Family Court in an effort to obtain information and clarity on the Final Order issued by the Bronx Family Court granting John Doe unsupervised visitation with L.S.  Scott was unable to speak with anyone in the court docket room or court division due to a fire drill.  The same day, Scott also spoke with a Child Protective Specialist Supervisor, who relayed information regarding the allegations of the complainant in John Doe's 2005 criminal case and that John Doe was not associated with any other cases.  Scott determined that John Doe's case required that the Bronx Family Court be notified of John Doe's sex offender status.  The next day, Scott spoke with Cappiello regarding the need to notify the Bronx Family Court of John Doe's sex offender status prior to it hearing John Doe's petition for visitation with M.S.  At some point after John Doe's filing of his petition for visitation with M.S., an investigator for the Bronx Family Court contacted Scott, who told the investigator stated that John Doe could not have contact with anyone under the age of eighteen.

54.     On March 12, 2013, the Bronx Family Court dismissed John Doe's petition seeking visitation with M.S. without prejudice because "the conditions of the Petitioner's probation indicate that he is not to live in the same home as a child under the age of 18."

55.     On December 12, 2012, at an office report, Scott reiterated to John Doe that he was to have no contact with M.S. or any other children.

56.     On January 24, 2013, Scott spoke with Mary Osborne, Deputy Director of DOCCS's Sex Offender Management Unit and discussed John Doe's request for parental contact.  Osborne recommended that John Doe be referred back to NYCATS for an updated evaluation to determine whether he could return to live with his family.  Osborne also suggested that Jane Doe be interviewed and evaluated by NYCATS.

57.     In January 2013, Scott informed Cappiello of her conversation with Osborne.  Cappiello was not previously aware that Scott was considering permitting John Doe to return home and have contact with M.S.  Cappiello was not himself taking any steps to explore John Doe reuniting with his family.

58.     On January 29, 2013, Steven Rego, a licensed master social worker who worked at NYCATS, met with John Doe to assess his suitability to return to the home of Jane Doe.  Rego reported that during his interview with John Doe on January 29, 2013, John Doe "denied the offense outright."  Rego noted that "[t]he records indicate that during his parole hearing, [John Doe] denied putting his penis in his niece but acknowledged that he began to touch his niece and then progressed to oral sex with her."  Rego also noted that John Doe reported to him that "he only said these to the parole board because he wanted to be released and was thus lying to the parole board" and that John Doe "continued to maintain that he did not molest her in any way."  On February 4, 2013, Rego met with John Doe and Jane Doe, and reported that "[John Doe] denies his sexual offense and informed [him] that he admitted some sexual contact to the parole board because he believed it was the only way he would be released."  After meeting

with both Jane and John Doe, on February 4, 2013, Rego determined: "[Mr. Doe] should be permitted to reside with his wife.  Cohabitation with a partner of the opposite sex is actually a protective factor for those who commit sexual offenses.  It also puts [Mr. Doe] with someone who can offer support if needed.  It is therefore conducive to the principles of relapse prevention."  True and accurate copies of the NYCATS Clinical Recommendation Forms dated January 29, 2013 and February 4, 2013, bates stamped DOCCS0000189–90, 192–93, are attached as Ex. C.

59.   On February 7, 2013, Scott told John Doe that he could return home and have contact with his son, M.S.  On the same day, John Doe moved in with Jane Doe and M.S. at the family's apartment in the Bronx.  Scott's permission for John Doe to return home and have contact with his son M.S. is reflected in an entry by Scott in John Doe's PCR on February 7, 2013.  Aside from that PCR entry, the record in this case, as developed in discovery, does not contain a copy of a written statement of permission from Scott for John Doe to return home and have contact with his son, M.S.

60.   No entry is contained in John Doe's PCR regarding any review or approval by John Doe's Senior Parole Officer or Bureau Chief permitting John Doe to have contact with M.S. in February 2013.  On April 8, 2013, Scott and Cappiello met to review John Doe's case and discussed that John Doe was living in the Bronx with his family, although Cappiello testified that he did not recall realizing, at the time of the April 8, 2013 meeting, that John Doe was residing with M.S. and that, instead, he first became aware that John Doe was residing with M.S. later in April 2013, when he was told by Lima.

61.     In April 2013, John Doe's case was scheduled to be transferred to the Bronx Area II Office, where his new residence was located.  On April 19, 2013, Parole Officer Tawana Johnson of the Bronx Area II Office made an entry in John Doe's PCR, which stated: "conference with spo armstrong - after reviewing chronos entries subject was rec[-]ently given permission to reside with wife even though subject has sara conditi[-]ons and no contact with any person under the age of eighteen. Subject has a sma[-]ll child in residence. Whereas subject is currently on for rape 1st of person 13 years of age, board imposed special condition has not been removed."  On or about April 22, 2013, Bronx Area II Bureau Chief Rodney Young spoke with Lima about John Doe's case and John Doe's transfer was cancelled.

62.     On June 17, 2013, Rosado instructed Scott to review John Doe's case to confirm that John Doe was properly residing with his family, after Rosado determined that there did not appear to be any notes confirming that an exception had been made for SARA compliance.

63.     On July 1, 2013, Rosado instructed Scott to discuss with Lima John Doe's living arrangements with his child.

64.     On July 11, 2013, Scott told John Doe to gather all family court documents, as well as his reassessment from NYCATS, in anticipation of a review by Rosado.

65.     On August 6, 2013, Rosado directed Scott to require John Doe to move out of his then-current residence as soon as possible.  The same day, Lima discussed John Doe's living arrangement with Rosado, and Lima also determined that John Doe should not be permitted to live with the child and therefore must move.  Lima based this

determination on John Doe's sexual offense and the fact that John Doe's Parole Board condition prohibited contact with any person under the age of eighteen without the written permission of the supervising parole officer.

66.     On August 22, 2013, Scott told John Doe that he was not permitted to have contact with M.S. and would have to move out of his home and back to a homeless shelter.  Scott was not instructed to, and did not, inform John Doe of any procedure by which he could contest this decision.

67.     Jane Doe was not contacted by Scott, Rosado, or Lima prior to their deciding and telling John Doe in August 2013 that he could not have contact with M.S. and must move out of his family home.

68.     On September 5, 2013, John Doe was told by a different parole officer to move out of his family's home immediately.  That day, John Doe returned to the BRC Shelter in Manhattan.

69.     On or about September 19, 2013, Rosado removed Scott from John Doe's supervision and replaced her with Valerio, who consequently assumed responsibility as John Doe's parole officer.  Rosado removed Scott from John Doe's supervision because she had permitted John Doe to live with his family and have contact with M.S.  Rosado told Scott not to have further contact with John Doe or involvement with his case.  On or about the same day, Scott conferenced with Valerio regarding the transfer of John Doe's case from her to him.

**Parental Contact Protocol**

70.    On August 21, 2013, DOCCS adopted a directive (Agency Directive 9601) called the Parental Contact Protocol ("the Protocol").  A true and accurate copy of the Protocol, bates stamped DOCCS0016945 through 51, is attached as Ex. D.

71.    The Protocol addresses the "parental legal rights [that] must be considered in instances where: (1) an individual who is expected to be under or is under community supervision (a releasee); and (2) the releasee is the biological or adoptive parent of a minor (a person under the age of 18); and (3) a condition of the releasee's supervision limiting or prohibiting such contact has been imposed or is contemplated by DOCCS." The Protocol sets forth the administrative procedure by which to consider "[w]hat conditions are reasonably necessary for a releasee to properly exercise his/her parental rights while protecting his/her children from harm or danger."

**John Doe's Request for Contact Under the Parental Contact Protocol**

72.    On September 17, 2013, an attorney for John Doe sent a letter to the New York State Board of Parole, Anthony J. Annucci, and Terrence X. Tracy, requesting that DOCCS immediately permit John Doe to return to his family's home.  A true and accurate copy of the letter, bates stamped DOCCS0016219 through 16282, is attached as Ex. E.  On September 26, 2013, John Doe's attorney sent the letter to Lima.

73.    On October 2, 2013, Lima told John Doe's attorney that he would be initiating an investigation pursuant to the Protocol regarding John Doe's request for contact with M.S.  Lima acknowledged that DOCCS had 45 days to complete the investigation, but told John Doe's counsel that he expected the investigation in John Doe's case to be "expedited."

74.     On October 7, 2013, Lima, Rosado, and Scott met to discuss the investigation into John Doe's request for parental contact, and Lima and Rosado directed Scott to review the Protocol and assist John Doe in gathering documentation related to DOCCS's investigation.   After the meeting, Scott spoke to John and Jane Doe, in separate phone calls, about the Protocol.

75.     On October 8, 2013, John Doe reported for a regular office visit and provided much of the paperwork required by the Protocol.

76.     On October 8, 2013, Scott spoke on the phone with Beverly Martin, who agreed to provide additional documentation in support of John Doe's request for parental contact.

77.     On October 10, 2013, John Doe had his first office visit with Valerio, during which they discussed John Doe's parole conditions and request for parental contact.  At that time, John Doe had already moved out of his home and back to a shelter.

78.     On October 11, 2013, John Doe gave Scott a letter from Martin supporting his request for parental contact, as well as other paperwork related to the request.

79.     A true and accurate copy of paperwork provided by Jane and John Doe pursuant to the Protocol, bates stamped DOCCS0000121 through 123 and 212 through 221, is attached as Ex. F.

80.     On the evening of October 11, 2013, Valerio and another parole officer conducted a home visit at the BRC Shelter and confirmed John Doe was living there.

81.     Valerio, as lead investigator, together with the assistance of Parole Officers Rennie Rodriguez and Rebecca Rodriguez, conducted the investigation into John Doe's request for parental contact pursuant to the Protocol, as directed by Rosado.

Rosado directly oversaw the investigation into John Doe's request for parental contact pursuant to the Protocol.  Lima and Rosado decided what documents should be reviewed and who should be interviewed in the investigation.  Valerio, Rennie Rodriguez, and Rebecca Rodriguez collected all documents that Rosado and Lima directed them to collect, and they interviewed all persons whom Rosado and Lima directed them to interview.

82.    Valerio, Rennie Rodriguez, and Rebecca Rodriguez took the following actions in their investigation into John Doe's request for parental contact pursuant to the Protocol:

a.  On October 22, 2013, Valerio contacted the Bronx District Attorney's Office and was told that the Assistant District Attorney who prosecuted John Doe's 2005 criminal case no longer worked at the office.  A supervisor at the Bronx District Attorney's Office told Valerio that she would order records from the criminal case.

b.  On October 24, 2013, Valerio and Rennie Rodriguez visited the Bronx Administration for Children Services office, where they searched for but found no records related to John Doe or the complainant in his 2005 criminal case.

c.  On October 25, 2013 and October 26, 2013, Valerio and Rennie Rodriguez visited Martin's residence and interviewed her regarding John Doe's 2005 criminal case and his request for parental contact. Beverly Martin told Valerio and Rennie Rodriguez that she had known John Doe for twenty years, had no objection to his request for parental

contact, and stated that she felt comfortable leaving her children with John Doe.  Martin also provided a written statement to Valerio and Rennie Rodriguez supporting John Doe's request for parental contact.  During the October 26 visit, Valerio and Rennie Rodriguez also interviewed L.S., who told them that she never had a problem with her father, John Doe, and that she and John Doe have a nice relationship.

d.  On November 4, 2013, Rebecca Rodriguez called the complainant in John Doe's criminal case and spoke with her about John Doe's request for parental contact.  Rebecca Rodriguez informed the complainant that the purpose of the interview was to get her feedback regarding John Doe's request for parental contact.  The complainant stated that she did not see a reason to interview her because she had nothing positive to say about John Doe.  When Rebecca Rodriguez asked the complainant whether John Doe should be able to reside with his family, the complainant replied, "Why should he live happy and comfortable when he took something from [me] that [I] can't get back."  The complainant refused a request from Rebecca Rodriguez for a face-to-face interview but indicated she would speak more over the phone.  On November 5, 2013, Rebecca Rodriguez called the complainant several times and left voicemails but never heard back from her.

e.  On November 4, 2013, Valerio and Rennie Rodriguez interviewed Jane Doe at her home.  Jane Doe told Valerio and Rennie Rodriguez

that she "feels completely safe with [Mr. Doe] residing with their son." Jane Doe also provided a written statement expressing her strong desire to live with her husband and son.

f.   On November 8, 2013, Valerio and Rennie Rodriguez visited Bronx Family Court and attempted but were unable to review the files of John Doe's petitions for visitation with L.S. and M.S.

g.   On November 9, 2013, Valerio and Rennie Rodriguez visited the NYPD Special Victims Bureau in the Bronx and received information relating to John Doe's 2005 criminal case.

h.   On November 19, 2013, Valerio and Rebecca Rodriguez visited the Bronx District Attorney's Office and reviewed documents relating to John Doe's 2005 criminal case.

i.   On December 6, 2013, Valerio and Rebecca Rodriguez visited Bronx Family Court and, with the permission of John Doe, reviewed the files of John Doe's petitions for visitation with L.S. and M.S.

83.   On November 18, 2013, John Doe's attorney provided Lima with a clinical evaluation of John Doe conducted by Richard B. Krueger, M.D., as well as a copy of his resume.  A true and accurate copy of Dr. Krueger's clinical evaluation and resume, bates stamped DOCCS0016351 through 16389, is attached as Ex. G.  Following receipt of Dr. Krueger's evaluation and resume, on November 18, 2013, Lima forwarded them to Rosado and Valerio.

84.   On December 3, 2013, John Doe's attorney sent a letter to Lima noting that 63 days had passed since October 2, 2013, when Lima told counsel that DOCCS

would be initiating an "expedited" investigation. A true and accurate copy of the letter, bates stamped DOCCS0016431, is attached as Ex. H. The letter requested that DOCCS conclude its investigation immediately or inform John Doe's attorney of the reasons for the delay. No explanation of the delay was provided to John Doe or his attorney.

85.     On December 19, 2013, Rosado issued a report to Lima summarizing the results of the investigation. A true and accurate copy of Rosado's report to Lima, bates stamped DOCCS0000133 through 136, is attached as Ex. I. Prior to Rosado's December 19, 2013 report, Valerio had been transferred to another Parole Office and had no input or recommendations regarding Rosado's report to Lima.

86.     A true and accurate copy of the documents prepared and collected by Valerio, Rennie Rodriguez, and Rebecca Rodriguez during the investigation and provided to Rosado and by Rosado to Lima, bates stamped DOCCS0000137 through 147 and 156 through 203, is attached as Ex. J. These documents, together with the materials provided by Jane and John Doe and John Doe's attorney, constituted everything Rosado reviewed in connection with the investigation.

87.     On February 21, 2014, Lima issued a determination denying John Doe any contact with M.S. Lima did not consider or permit John Doe to have limited contact with M.S. Lima determined that he did not need to consider limited contact because John Doe had requested to live with M.S., and it was Lima's view that John Doe had not requested limited or supervised contact with M.S. A true and accurate copy of Lima's decision, bates stamped DOCCS0000046 through 47, is attached as Ex. K.

88.     The Protocol provides that an investigation into a request for parental contact "should be completed within 45 days" and that "[a]ny reasons for delay shall be

subject to review by the Bureau Chief [and] a releasee may challenge a delay in the investigation and the reasons for such delay by submitting their challenge in writing to the Bureau Chief."  The investigation into John Doe's request for parental contact took more than 45 days.  Neither Rosado nor Lima informed John Doe of the delay.

89.     On April 3, 2014, John Doe notified William Hogan, Regional Director of DOCCS responsible for overseeing the Manhattan VI Area Office, of his intention to appeal Lima's decision.  Pursuant to the Protocol and in response to John Doe's letter, Regional Director Hogan scheduled a "Parental Case Conference" in John Doe's case for May 5, 2014.

90.     On April 25, 2014, Plaintiffs initiated this lawsuit in the Southern District of New York.

91.     John and Jane Doe, along with their attorneys, attended the May 5, 2014, case conference with Hogan.  At Hogan's request, and over Plaintiffs' objection, Lima also attended the conference.

92.     On May 22, 2014, Hogan issued a decision reversing Lima's determination and allowing John Doe "contact with his biological son, [M.S.]."  A true and accurate copy of Hogan's decision, bates stamped DOCCS0000044 through 45, is attached as Ex. L.  In making his decision, Hogan reviewed Rosado's report, the documents prepared and collected during the investigation and provided to Lima by Rosado, and the materials provided by Jane and John Doe and John Doe's attorney. Hogan did not review any new or additional material not reviewed by Rosado or Lima, with the exception of an additional letter prepared by John Doe's attorneys in his support. In allowing John Doe contact with M.S., Hogan did not request the approval of the Parole

Board, nor did he seek from the Parole Board any modification or cancellation of John Doe's conditions of supervision.

93.     On or about June 4, 2014, John Doe received modified parole conditions from his parole officer in the Bronx Area II Office permitting him to have unrestricted contact with M.S. and L.S.

94.     While John Doe was supervised by the Manhattan VI Area Office, he was compliant with his conditions of parole and his supervising parole officers were not aware of any instances in which he caused harm to M.S. or L.S., including during the time when he was permitted parental contact.


Dated:     New York, New York
           October 18, 2016

DEBEVOISE & PLIMPTON LLP

By:     _/s/ Blair R. Albom_____ ___
Blair R. Albom
(bralbom@debevoise.com)
919 Third Avenue
New York, New York 10022
(212) 909-6000
*Attorneys for Plaintiffs*


LIPPES MATHIAS WEXLER
FRIEDMAN LLP

By:     _/s/ Jeffrey P. Mans_____
Jeffrey P. Mans
54 State Street
Albany, New York 12207
(jmans@lippes.com)
(518) 462-0110
*Attorney for Defendants Lima and Valerio,* and *signing on behalf of attorneys for Defendants Cappiello, Rosado, and Scott*

**Index of JSF Exhibits**

| Ex. | Document |
|---|---|
| A. | Board of Parole imposed conditions, bates stamped DOCCS0017051 through 17055 |
| B. | Additional conditions of parole signed October 4, 2012, bates stamped DOCCS0017073 |
| C. | NYCATS Clinical Recommendation Forms dated January 29, 2013 and February 4, 2013, bates stamped DOCCS0000189–90, 192–93 |
| D. | Parental Contact Protocol, bates stamped DOCCS0016945 through 51 |
| E. | September 17, 2013 letter from John Doe's attorney to the New York State Board of Parole, Anthony J. Annucci, and Terrence X. Tracy, bates stamped DOCCS0016219 through 16282 |
| F. | Paperwork provided by Jane and John Doe pursuant to the Parental Contact Protocol, bates stamped DOCCS0000121 through 123 and 212 through 221 |
| G. | Clinical evaluation and resume of Richard B. Krueger, M.D., bates stamped DOCCS0016351 through 16389 |
| H. | December 3, 2013 letter from John Doe's attorney to Lima, bates stamped DOCCS0016431 |
| I. | Rosado's report to Lima, bates stamped DOCCS0000133 through 136 |
| J. | Documents prepared and collected by Valerio, Rennie Rodriguez, and Rebecca Rodriguez during the investigation and provided to Rosado and by Rosado to Lima, bates stamped DOCCS0000137 through 147 and 156 through 203 |
| K. | Lima's decision, bates stamped DOCCS0000046 through 47 |
| L. | Hogan's decision, bates stamped DOCCS0000044 through 45 |