# Exhibit 2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHN DOE and JANE DOE, Individually and on behalf of M.S., an Infant, as Next Friends,<br><br>                                      Plaintiffs,<br><br>- against -<br><br>ANTHONY ANNUCCI, Acting Commissioner of the New York State Department of Corrections and Community Supervision; TINA STANFORD, Chairwoman of the New York State Board of Parole; WILLIAM HOGAN, Regional Director of New York State Department of Corrections and Community Supervision; JOSEPH LIMA, Bureau Chief of the Manhattan VI Area Office of the New York State Division of Parole; TERRENCE X. TRACY, Counsel for the Board of Parole; Parole Officer EMILY SCOTT; Parole Officer SIMON VALERIO; Parole Officer REBECCA RODRIGUEZ; Parole Officer RENNIE RODRIGUEZ; Senior Parole Officer FNU ROSADO; Parole Officer FNU MERCEDES.<br><br>                                      Defendants. | 14 Civ. 2953<br><br>**DECLARATION OF JANE DOE IN SUPPORT OF PLAINTIFFS' APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION** |

I, Jane Doe, declare as follows:

       1.       My name is Jane Doe.  I am 42 years old, and I am currently employed as a legal assistant at a law firm in Manhattan.

       2.       I submit this declaration in support of my application for a Temporary Restraining Order and Order to Show Cause for Preliminary Injunction.  This Declaration is based on personal knowledge and my understanding of relevant documents.

3. I married my current husband, John Doe, on September 22, 2007. We had known each other for 25 years prior to our marriage, since we grew up together in the Bronx as children. Our relationship became romantic in September 2000.

4. Together, John and I are the proud parents of a one-year-old son, M.S. I also have a 24-year-old daughter with another man.

5. I became pregnant with M.S. in February, 2012. I suffered major complications throughout my pregnancy. In September 2012, I went temporarily blind as a result of increased pressure on my optic nerve due to Graves' ophthalmopathy. At that time, which was about a month before M.S.'s due date, my doctors induced labor.

6. M.S. was born with serious medical problems. When M.S. was about three months old, he was diagnosed with Respiratory Syncytial Virus. He was hospitalized on two separate occasions, for about one week each time. When M.S. was five months old, doctors discovered that he had patent ductus arteriosus, a congenital disorder of the heart. At six months old, M.S. was again hospitalized to undergo a procedure to place a catheter in his heart, which must be monitored for the rest of his life.

7. During this difficult time for me and our son, John was our bedrock of support. From January 26, 2013 to September 5, 2013, John lived with me and M.S. in our apartment at REDACTED in the Bronx. During these seven months, John was a loving and active father. John adored M.S. and cared for him very well. He fed M.S. his formula, changed him, bathed him, played with him, and took him to all of his doctor appointments. He painted M.S.'s bedroom in bright colors because he knew that children liked them. Every day, John would spend time bonding with M.S. and aiding in his development. They shared a daily 30-minute

2

"talk time," when John would, for example, tell M.S. his full name and that "I'm your dad." John also had "shoulder time" with M.S., when he would hold and cuddle him.

8. While he lived at home, John was also a helpful and supportive husband. He assisted with household chores and did most of the cooking for our family, as I had not fully recovered from the blindness that my pregnancy had caused.

9. I feel completely safe with John living with our son, and very much want for him to live with us, which is something that I have repeatedly told the various parole officers from the Department of Corrections and Community Supervision ("DOCCS") who investigated our case.

10. In or about November 2013, I moved with M.S. to live with my mother in her one-bedroom apartment. I pay my mother's rent of $1,200 per month. John currently lives in a studio apartment on REDACTED in the Bronx. We spend $840 per month to rent the apartment. This is an ongoing financial burden that is difficult for us to bear.

11. Since John was forced to move out of our home in the Bronx, I have experienced great difficulty looking after M.S. on my own. Things are getting harder and harder by the day. M.S. misses his father and looks for him every night. M.S. is also frequently ill. Because I work full time, it is difficult for me to care for M.S. on my own. Although my mother helps out with M.S. when she can, she works two jobs so she is not home very often.

12. I also continue to suffer from other medical problems. I recently had a hysteroscopy which required anesthesia. John could not take me home from the procedure or care for M.S. while I was recovering because of DOCCS' prohibition on his contact with M.S. I am scheduled to undergo a hysterectomy this summer that will require weeks of recovery.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 24, 2014

REDACTED