UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------X
:
JOHN DOE and JANE DOE, INDIVIDUALLY and on   :
behalf of M.S. an infant, as NEXT FRIENDS,
:
                                  Plaintiffs,   :
:
              -against-                 :
:
JOSEPH LIMA, Bureau Chief of the Manhattan VI Area   :        14 Civ. 2953 (PAE)
of the New York State Division of Parole; Parole
Officer EMILY SCOTT; Parole Officer SIMON   :
VALERIO; Senior Parole Officer RICHARD ROSADO;   :
and Senior Parole Officer, JAMES CAPPIELLO,
:
                          Defendants.   :
:
----------------------------------------------------------------- -------X

## DEFENDANT JAMES CAPPIELLO'S IN LIMINE
## MEMORANDUM OF POINTS AND AUTHORITIES

ROBERT A. SOLOWAY
ROTHMAN, SCHNEIDER,
   SOLOWAY & STERN, LLP
100 Lafayette Street
New York, New York  10013
(212) 571-5500

TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES   ...................................................................ii, iii

MOTIONS IN LIMINE   .....................................................................1

INTRODUCTION AND PROCEDURAL POSTURE   ....................................5

DISCUSSION AND APPLICABLE LAW ......................................................7

    I. Where Judgment on Liability has been Summarily Entered, Defendants
       Should be Permitted to Establish as Pertinent to Damages pursuant to F.R.E.
       404(b) that John Doe has Been Previously Incarcerated Due to Prior
       Serious Criminal Activity and Thereby Deprived of Contact with Family
       Members Repeatedly in his Life ........................................................7

         A.  General Rule 404(b) Principles ..........................................7

         B.  Applicable Law ...........................................................10

    II.  Doe's Deposition Should Resume Because Relevant Questions Were not
        Answered on the Grounds of an Asserted Fifth Amendment Right, or the
        Trial Should be Stayed Until the Privilege no Longer Applies .......................14

CONCLUSION ..............................................................................15

## Table of Authorities

**Cases**

*Brantley v. Perryman*
    2006 WL 2786880 (M.D. Ala. Sept 27, 2006) .................................................................8

*Karnes v Strutski*
    62 F.3d 485 (3rd Cir. 1995) ...............................................................................................12

*Montoya v Sheldon*
    898 F.Supp.2d 1259 (D.N.M. 2012) ..................................................................................13

*Stephen v. Hanley*
    2009 WL 1471180 (E.D.N.Y.  May 21, 2009) ..................................................................13

*Udemba v. Nicoli*
    273 F.3d 8 (1st Cir. 2001)...................................................................................8, 12, 13

*United States v. Miller,*
    895 F.2d 1431 (D.C. Cir.1990) ............................................................................................8

*United  States v. Harris*
    733 F.2d 994 1006 (2d Cir. 1980) ........................................................................................8

*United States v. Brand,*
    467 F.3d 179 (2d Cir. 2006) ................................................................................................8

*United  States v. Inserra*
    34 F.3d 83 (2d Cir. 1994) ....................................................................................................8

*United  States v. Moran-Toala*
    726 F.3d 334 (2d Cir. 2013) ................................................................................................8

*United States v. Curley*
    639 F.3d 50 (2d Cir. 2011) ..................................................................................................8

*United States v. Sneezer*
    983 F.2d 920 ........................................................................................................................8

*United States v. Diggs*
    649 F.2d 231 (9th Cir. 1980) ...............................................................................................8

**Statutes and Rules**

42 U.S.C. § 1983 ....................................................................................................12

Fed. R. Evid. 404 ....................................................................................1, 7, 8, 12, 13

## MOTIONS IN LIMINE

Defendant, JAMES CAPPIELLO, makes the following Motions in Limine with respect to the upcoming damages trial in this matter.  The defendant seeks an Order containing the following evidentiary rulings:

(i)    Defendants seeks to present evidence of JOHN DOE'S lengthy prior criminal history, including his commission of three gunpoint robberies that resulted in convictions in the 1980's -- including the underlying facts -- and his 2004 convictions for Endangering the Welfare of a Child during the time period between March 1, 2002 and February 4, 2003; Statutory Rape in the Second Degree in March 2002; and Sodomy in the Second Degree on or about February 4, 2003.[1]

A. Such criminal activity is admissible pursuant to Fed.R.Evid. 404(b) to establish that as a result of his long history of choosing to commit serious crimes, JOHN DOE has repeatedly served State prison sentences followed by supervision by parole officials.  As a consequence, he has spent significant periods of time deprived of the company of his family, and of the full measure of liberty interests experienced by law abiding members of the community.  Such deprivations are relevant to damages, and distinguish him from individuals who have not regularly known such privation; whose lives have not been visited by years-long stretches of incarceration and government supervision during which freedom of association and movement is materially curtailed.  The jury is entitled to know these facts in making an individualized determination of damages in a case where

---

[1] The statutory rape occurred when Doe engaged in sexual intercourse with his wife's thirteen year old niece, Shakima, who was then residing in his family home in a kinship foster-care arrangement.  The sodomy occurred when Doe placed his penis in Shakima's mouth at a point when she had achieved the age of fourteen.

damages are primarily psychic and emotional, and of necessarily uncertain measure.[2]

B. Should plaintiffs pursue their pleaded claims for punitive as well as compensatory damages, the defendant will seek on that basis as well to elicit each and every prior bad act of which the defendants were aware in supervising him, including the aforesaid gunpoint robberies, and the pedophile offenses perpetrated against his niece. The defendant will request that the jury be charged in deciding if a punitive award is warranted whether plaintiffs have shown that the conduct of the defendant they are considering was based on evil motive and intent, or characterized by outrageously callous indifference to the federally protected right infringed. It is not possible to determine such states of mind and motivations in a vacuum, and it is submitted the jury will only be equipped to make such a determination if fully informed of the facts the defendants knew about DOE when applying the parole conditions in the manner they did, even if it has now been decided that the restrictions put in place were constitutionally unsupported.

C. Whether DOE testifies or not, the fact-finder should award damages to the type of person who committed the crimes for which he was on parole. This Honorable Court has granted summary judgment on liability. If both a liability and damages trial were held, the jury would know the underlying facts of the case because they would have learned them just as the Court learned them through the summary judgment submissions. The jury would have heard the evidence and the arguments of the parties, including what the defendants knew and did when they acted in DOE's case, and would have found the facts. After finding liability -- which here must be presumed for

---

[2]

There is a degree to which these motions are necessarily contingent on how the trial unfolds. For example, it is unknown whether the defendant will testify, and it is unknown whether the plaintiffs' will pursue their claim for punitive damages, or seek only compensatory damages.

purposes of this motion -- the same jury would now be called upon to make the plaintiffs whole by an award of damages, if damages have been proved, and whether the defendant's should be deterred and punished by a punitive damage award. That's the terrain on which a damage trial would unfold absent summary judgment.

(ii)   JOHN DOE and his co-plaintiffs have prevailed on summary judgment as to both their substantive and due process claims. But DOE was a parolee and registered sex offender during the time the constitutional infringements occurred. The holding of this Court is that his fundamental parental liberty interest in maintaining a relationship with his biological child, M.S., was unduly infringed by the defendants. But as a parolee and registered sex offender, DOE did not enjoy the same degree of freedom to maintain relationships, or exercise the rights and privileges of citizens who are unfettered by the proscriptions to which Doe was lawfully subject. Such proscriptions are designed, among other things, to protect the public and particular individuals who come into contact with offenders rejoining society after prison. Thus, a properly informed and charged jury will award damages by first determining what constitutionally permissible limitations could have been imposed by DOCCS, and measuring that state of being against the greater blanket restrictions imposed which the Court has held ran afoul of DOE's rights. The defendant seeks to inform the jury of such permissible limitations through the presentation of expert testimony.[3]

---

[3]

There is reference in the Opinion and Order to the fact that some restriction may have been lawful or arguably lawful under Doe's supervision circumstances, but it was complete non-contact that was imposed on Doe with respect to his son for two time periods of four and then nine months, respectively:

> [E]ven assuming the facts justified some restrictions on contact between Doe and M.S. -- such as supervised visitation -- or made such restrictions within the protection of qualified immunity, the parole officials here imposed a blanket restriction and admittedly made no attempt to tailor the restriction to Doe's circumstances.

Opinion and Order, p. 42.

3

(iii)  If JOHN DOE testifies, the defendant seeks to challenge his credibility by eliciting that when arrested for a gunpoint robbery in 1986, he used a false name, date of birth, and place of birth to deceive law enforcement into believing he was not JOHN DOE because he was aware that under his true identity he stood convicted of an earlier gunpoint robbery in which a victim was shot by one of his accomplices, and DOE received a sentence of an indeterminate State prison term of 2⅓ to 7 years.

(iv)  If JOHN DOE testifies, the defendant seeks to elicit that he and Beverly Martin entered into a corrupt agreement to secure greater kinship foster-care benefits from the Administration for Childrens' Services by not disclosing DOE's presence in the home and thereby hiding DOE's contribution to the household's finances.

(v)  JOHN DOE sat for a deposition in this matter on April 21, 2016.  He was instructed by his counsel to refuse on Fifth Amendment grounds to answer questions put to him about the underlying sex crimes for which he was on parole on the grounds that, twelve years removed from the conviction, his direct appeal had not yet been perfected.  Defendant will seek to reconvene that deposition to secure sworn answers to questions about the underlying offense, including his relationship and behaviors toward his victim while she resided in his home.

(vi)  Mr. CAPPIELLO will seek a jury award that is not joint and several among the tortfeasors. As this is not a case in which a single indivisible injury has been inflicted, it is respectfully submitted that the jury should determine an award, if any, and then divide the award in accordance with their judgment of individual fault among the culpable defendants.

(vii)  The jury should be instructed not to factor attorney's fees into the computation of the

4

award made to any plaintiff.

(viii) Plaintiff's counsel should not be permitted to refer to defense counsel as State or government attorneys, nor to refer to indemnification by the State.

(ix) Plaintiffs' counsel should be precluded from requesting a particular dollar amount of damages from the jury.[4]

## INTRODUCTION and PROCEDURAL POSTURE

Plaintiff, JOHN DOE, was convicted of sex offenses against a teenage girl (his niece by marriage) who at the time of the offenses resided in his home as a kinship foster child.  The victim was 13 and 14 years old during the time she was repeatedly sexually assaulted by Doe.

Doe was convicted in Bronx County Supreme Court, Criminal Term on October 18, 2004 after a jury trial and sentenced in May 2005.  He served more than eight years in State prison, after which he was released to parole supervision on November 2, 2011.  In September, 2012, while Doe was on parole, his  wife, JANE DOE, gave birth to a son, M.S.

When parole officials learned Doe was living in a home with a newborn, they invoked a special condition of parole which mandated "no contact with any person under the age of eighteen, without the written permission of the supervising parole officer." He was thereafter barred from any contact with his infant son for more than 13 months during two separate time periods; the first from October  4, 2012 to February 7, 2013, the second from August 6, 2013 to May 22, 2014.

On September 4, 2014, plaintiffs filed their First Amended Complaint ("FAC") asserting violation of their constitutional rights to substantive due process, (FAC ¶¶ 90-97), freedom of

---

[4] This writer is briefing further at this juncture only the motions seeking to introduce evidence of Doe's prior crimes, and his refusal to respond to questions based on his Fifth Amendment rights.

association, (FAC ¶¶ 98-104), and procedural due process (FAC ¶¶ 105-112).

When discovery concluded, plaintiffs' moved for summary judgment as to liability with respect to all of their claims. The defendants, with the exception of Emily Scott who did not file a response, opposed the motion, and Rosado, Valerio, and Lima also cross-moved for summary judgment.

In an Opinion and Order filed August 31, 2017, this Court granted plaintiffs' motions as to liability in all respects, and denied the defense motions for summary judgment. The actions of the defendants in denying John Doe contact with his nuclear family "unavoidably reveals an abject failure by parole authorities ... to engage at all with the issues presented by [Doe's] request to reside with his wife and newborn son, " found the Court. (Opinion and Order at p. 32)  Ultimately the Court concluded that the *total deprivation* by DOCCS State actors of Doe's fundamental liberty interest [in maintaining any relationship with his son] was sufficiently arbitrary and egregious to violate substantive due process." (Opinion and Order at p. 30).

As to qualified immunity -- which protects government officials from liability unless the official violated a statutory or constitutional right that was "clearly established" at the time of the challenged conduct -- The Court held that none of the defendants was entitled to the defense. (Opinion and Order at p. 41).

## DISCUSSION AND APPLICABLE LAW

**I. Where Judgment on Liability has been Summarily Entered, Defendants Should be Permitted to Establish as Pertinent to Damages pursuant to F.R.E. 404(b), that John Doe has Been Previously Incarcerated Due to Prior Serious Criminal Activity and Thereby Deprived of Contact with Family Members Repeatedly in his Life.**

    A.  <u>General Rule 404(b) Principles</u>

Pursuant to Federal Rule of Evidence 404(b), the weight of authority supports permitting defendants to introduce separations from family which occurred as a consequence of JOHN DOE's many prior law enforcement contacts, convictions, and sentences.  The Rule states, in pertinent part:

> Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in conformity with the character.  This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Fed. R. Evid. 404(b)(1) and (2).[5]

One well-formed statement of the admissibility test for prior act evidence comes from the District of Columbia Circuit Court:

> Rule 404(b) of the Federal Rules of Evidence draws a fine line between the introduction of evidence of prior wrongs that is being used solely to attack an individual's character and the introduction of such evidence when it is relevant to some other material issue in the trial.  Evidence of prior wrongs is generally excluded unless it may "be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed.R.Evid. 404(b).  While some courts may read this

---

[5]

> As the Advisory Committee Notes make clear, Rule 404(b) applies equally to both criminal and civil matters:
>
> > Nothing in the amendment is intended to affect the scope of Rule 404(b).  While Rule 404(b) refers to the 'accused,' the 'prosecution,' and a 'criminal case,' it does so only in the context of a notice requirement. The admissibility standards of Rule 404(b) remain fully applicable to both civil and criminal cases.
>
> Fed.R.Evid. 404(b), advisory committee notes, 2006.

provision as an attempt by Congress to exclude certain evidence, the D.C.
Circuit has read Rule 404(b) to be inclusive: "*any* purpose for which bad-acts
evidence is introduced is a proper purpose so long as the evidence is not
offered *solely* to prove character.[6]

*United States v. Miller*, 895 F.2d 1431, 1436 (D.C. Cir.1990), *cert. denied,* 111 S.Ct. 79 (emphasis

in original).    Like the D.C. Circuit, the Second Circuit has adopted an "inclusionary" approach to

admission of other act evidence. *See*, for example, *United States v. Harris*, 733 F.2d 994, 1006 (2d

Cir. 1980); *United States v. Brand*, 467 F.3d 179 (2d Cir. 2006); *United States v. Inserra*, 34 F.3d

83, 89 (2d Cir. 1994); and *United States v. Moran-Toala*, 726 F.3d 334, 345 (2d Cir. 2013)(quoting

*United States v. Curley*, 639 F.3d 50, 56 (2d Cir. 2011)) (noting that the Second Circuit "follows the

'inclusionary' approach, which admits all 'other act' evidence that does not serve the sole purpose

of showing the defendant's bad character and that is neither overly prejudicial under Rule 403 nor

irrelevant under Rule 402.").    For further explication of the operation of such "inclusionary"

approach, *see also, United States v. Sneezer*, 983 F.2d 920, 924 (citing, *United States v. Diggs*, 649

F.2d 231 (9th Cir. 1980))("evidence of other crimes is inadmissible under this rule only when it

proves nothing but the defendant's criminal propensities.").

    Thus, the law calls for the exclusion of *relevant* prior act evidence only when its probative

value is outweighed by the danger of *unfair* prejudice.    The facts set forth herein establish that in a

trial involving only damages, the evidence should be admitted.

    As briefly touched on already, DOE has previously been convicted and imprisoned for the

---

[6]

Case law makes clear the list of purposes set out in the Rule is not exhaustive. *See, Udemba v. Nicoli*, 237 F.3d
8, 15 (1st Cir. 2001) (rejecting the contention that Rule 404(b) contains a comprehensive list of the purposes for
which evidence can be relevant when proffered to prove something other than character); *Brantley v. Perryman*,
2006 WL 2786880 at *2 (M.D. Ala. Sept 27, 2006) (Prison guard successfully admitted prior rule violations against
plaintiff inmate under Rule 404(b) to show effect they had upon her decisions in responding to plaintiff's conduct, and
stating, '[t]he purposes set forth in this rule are illustrative, not exhaustive.')

commission of three gunpoint robberies committed respectively on November 19, 1980, May 23, 1986, and July 11, 1986.

The first was a bodega robbery perpetrated by DOE and two accomplices, one of whom was armed with a firearm. DOE and an accomplice entered the bodega to distract the employee by pretending to shop after which the armed individual entered with gun drawn and announced a robbery. The employee resisted and two of the perpetrators fled, including DOE. During a chase, the employee was shot by DOE's armed accomplice. DOE was convicted and sentenced to a term of imprisonment of 2⅓ to 7 years in State prison. He was released to parole supervision on March 16, 1983.

Three years later, the record shows that Doe committed two additional armed robberies for which he was caught. One was the gunpoint robbery of an individual on the street, whose property was taken by force by DOE and an accomplice on May, 23, 1986.   Doe was not immediately apprehended for the offense, and he and his accomplice got away.

The next armed robbery was committed July 11, 1986 by DOE, his brother, Darryl, and a third participant. The victim was a cab driver. Doe and his two accomplices entered a cab and upon doing so, displayed a firearm. The cab driver fled the cab and the three perpetrators drove off in his car. They were stopped by police and ultimately arrested. As a result of the arrest, the defendant was placed in a line-up viewed by the victim of the May 23 robbery, and he was positively identified and charged.

DOE pleaded guilty to both robberies on April 4, 1988, and was sentenced to indeterminate terms of imprisonment of 6 to 12 years on each, to run concurrently with one another. He was

released to parole supervision on May 15, 1992.[7]

B. Applicable Law

As noted herein, *infra*. at p. 2, note 2, it is not always certain how trial evidence will unfold, and motions in limine are often not subject to certain determination prior to trial.

It is clear, however, that case law overwhelmingly supports the admission of some facts about DOE's criminal background as to damages. Here, the probative worth of DOE's past has two proper evidentiary purposes: (i) showing that he has been subjected to prior deprivations of family contact due to his criminal actions in the past; and (ii) providing the jury with necessary background information and context in which to evaluate what an appropriate damage award should look like for an individual petitioning for a sum of unliquidated monetary damages based on claims to have suffered emotional and psychic harms caused by forced separation from his child.

As noted, this Court has granted summary judgment on liability, whereas if both a liability and damages trial were held, the fact-finder would know many underlying case facts from having learned them during the liability phase.

The jurors to be convened in the instant case will come with no knowledge as to facts of the case.

The proper measure of damages for this jury to award is the proper measure of damages for the individual who committed the crimes that put him on parole to begin with, having chosen to commit those crimes. Damages are not being awarded in a vacuum to the reasonable man hypothesized about in law schools, nor the average man who manages to get through life without

---

[7] The criminal history information set forth herein is gleaned from a combination of DOE's deposition testimony, and his rap sheet. A copy of DOE's rap sheet as printed December 19, 2013 is annexed to the Soloway Declaration as Exhibit A.

sexually violating 13 year old girls, but rather to an individual who violated a family member then living in his home due to the misfortune of having a drug addicted mother who couldn't take care of her.

Doe has been convicted of committing multiple unconscionable sexual assaults.  Although the jury returned a verdict against DOE as to only two of the assault counts charged (March 2002 and February 2003), the victim accused him of others which the jury found were not proved beyond a reasonable doubt.  By no means do the acquittals necessarily equate with factual innocence.  And the testimony of the victim establishes that the crimes were committed through the use of guile, cunning, and manipulation against a vulnerable young girl and family member living under DOE's roof.

For all of these reasons, the jury should not be permitted to believe that DOE is a loving, model parent, and award damages to a person whom they believe consistently puts the interests of others ahead of his own -- the definition of a caring parent ... and uncle.  Of course the jury must know he has been wronged by the overreach of the defendants; but they should also know what he did to his niece .[8]

---

[8]

The following are some of the words Hon. Peter J. Benitez delivered before imposing sentence at the sex assault trial over which he had presided:

> The jury's verdict clearly shows that the defendant not only engaged in illegal and prohibited sexual [stet] under with under age child under one occasions [stet] clearly shows he did at least two occasions two dates, two dates, two counts which he stands convicted.  Those were over the period of time, which [stet] particularly egregious about it is that the defendant was part of the family. So he had a unique position of trust with the child, where she would put her trust in him. And also be subject to parental supervision, that makes a child particularly vulnerable. It also means that the wound psychological and otherwise that the child suffers are longer lasting because this was a person in whom she placed trust. A person who had a great deal of control over her life, who violated her, not just a stranger who jumped out from an alley way and grabbed her. (pp.22-24)

Precedent for the admission of the prior criminal acts is abundant.

In *Karnes v Strutski*, 62 F.3d 485 (3rd Cir. 1995), plaintiff's car was stopped for speeding and he was detained by two Pennsylvania troopers.   He was ultimately released without being charged.   Before being released, an investigatory search ensued, and Karnes claimed to have been detained an unduly long period of time.

Karnes sued under § 1983 alleging an unduly lengthy detention, an investigatory search without reasonable suspicion, and a search conducted without probable cause.

At trial, over plaintiff's objection, the district court permitted the defendants to present evidence that the plaintiff had been arrested in 1985 for assaulting his sister and verbally resisting arrest without violence.   The court admitted the evidence "under Rule 404(b) to refute Karne's contention that he suffered damage from defendants' actions." *Karnes*, 62 F.3d at 500.

The Third Circuit affirmed, holding:

> Defendants argue the evidence was properly admitted after Karnes testified that the incident in this case diminished his respect for the police and thus caused him damage. After applying the balancing test of Federal Rule of Evidence 403, the district court gave a limiting instruction, admonishing the jury to consider the evidence only for the purpose of determining damages. We have held that evidence of prior bad acts under rule 404(b) can be admitted when the evidence is probative of a material issue other than character. We see no abuse of discretion here.

*Id.*

Similarly, in *Udemba v Nicoli*, 273 F.3d 8 (1st Cir. 2001), the First Circuit held in a false arrest and excessive force § 1983 action that plaintiff's assault on his wife which occurred two years after the events underlying the lawsuit were admissible under Rule 404(b) as to plaintiff's claims of

---

Sentence Minutes at p. 22.  A copy of the entire sentence proceeding is annexed to the Soloway Declaration as Exhibit B.

emotional damages.  Plaintiff's arrest occurred during a domestic dispute with his wife when he failed to comply with commands of officers investigating the event.  Plaintiff was arrested and escorted out of his home in handcuffs, which was seen by neighbors who had assembled.

Because plaintiff was arrested for another assault on his wife before his first case was moved to trial, the defendants were permitted over objection to question the plaintiff and his wife about the second incident resulting in arrest for another domestic assault.  The First Circuit affirmed, stating:

> In this instance, we conclude without serious question that the challenged evidence passes muster under the first prong of the Rule 404(b) inquiry ... Here, we accept the district court's supportable finding that the evidence was specially relevant to a contested issue in the case, namely, the extent of damages attributable to emotional distress.

*Udemba*, 273 F.3d at 15.

The *Udemba* court then move on to the conclusion that admissibility likewise passed muster under the second prong of 404(b) analysis, balancing the probative value of the evidence against its prejudicial effect, and affirming -- though in a "close call" -- the evidentiary ruling of the district court. *Id.*

Other cases are to the same effect, and -- with particular relevance here -- often because the contested evidence is admissible to address issues raised by the plaintiff's case as to damages.  *See Stephen v. Hanley*, 2009 WL 1471180 at *9 (E.D.N.Y. May 21, 2009)("[t]he youthful adjudication evidence, limited to the fact of the adjudication and its date, and the amount of time [plaintiff] spent in custody related to the adjudication, is relevant to causation and damages."); *Montoya v Sheldon*, 898 F.Supp.2d 1259 (D.N.M. 2012) ( "Montoya's prior arrests are relevant to the issue of his emotional distress damages, because the amount of times and the manner in which [he] had been arrested up to the arrest, if he is claiming emotional distress only to that time, or the amount of

13

arrests up until the present if he claims his emotional damages are ongoing, makes more or less probable the Defendants' arrest emotionally distressed him.")

**II. Doe's Deposition Should Resume Because Relevant Questions Were not Answered on the Grounds of an Asserted Fifth Amendment Right; or the Damage Trial Should be Stayed Until the Privilege no longer Applies.**

Doe declined at counsel's direction at his deposition on April 21, 2016 to answer numerous questions relating to his actions toward the victim of his sexual assaults by invoking his Fifth Amendment privilege against self incrimination. It was proffered by plaintiff's counsel that Doe's criminal appeal had not yet been perfected. There is no dispute that Doe has a Fifth Amendment privilege while his criminal case appeal remains on direct appeal. But his sworn answers are necessary to basic credibility issues which will likely arise if he testifies in the instant matter, and the criminal trial concluded in October, 2004. Doe was sentenced on May 11, 2005.

The defense will be thwarted in efforts to impeach Doe regarding many statements he made to parole, doctors, treatment providers, and others about contacts with his victim and general questions about the criminal case in which he was convicted.

Examples of questions he was directed not to answer include whether he or his wife were responsible for his niece's care (p. 30); whether his niece was present when he shoved his wife (on an occasion when the latter visited a hospital as a result)(p. 38); all questions about the underlying sex offenses (p. 56); and questions about the accuracy of written reports of treatment providers who rated him as a low risk to offend against his infant child (pp. 79 and 108).

Counsel has no knowledge of whether Doe's criminal appeal is still pending, but is ready to continue Doe's deposition at any reasonable time.

## CONCLUSION

For the foregoing reasons, defendant, JAMES CAPPIELLO requests that the Court grant the

relief requested.

Dated:   New York, New York
            December 12, 2019

                                        ROTHMAN, SCHNEIDER,
                                              SOLOWAY & STERN, LLP
                                        Attorneys for Defendant Cappielloe
                                        100 Lafayette Street
                                        New York, New York  10013
                                        (212)  571-5500


                          By: _____
                                   ROBERT A. SOLOWAY

15