UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ X
                                                  :

JOHN DOE and JANE DOE, Individually and on behalf of : 
M.S. an Infant, as Next Friends,                :            14 Civ. 2953 (PAE)

                          :
                  Plaintiffs,         :          OPINION AND ORDER
                          :

                 -v-                  :
                          :

JOSEPH LIMA, Bureau Chief of the Manhattan VI Area : 
Office of the New York State Division of Parole; Parole : 
Officer EMILY SCOTT; Parole Officer SIMON     :
VALERIO; Senior Parole Officer RICHARD ROSADO; : 
and Senior Parole Officer JAMES CAPPIELLO,    :
                          :
                  Defendants.      :
                          :
------------------------------------------------------------------------ X

PAUL A. ENGELMAYER, District Judge:

       The Court has entered summary judgment for plaintiffs as to liability on their claims

under 42 U.S.C. § 1983 against the five remaining defendants in this action, who, at relevant

times, were all parole officers of the New York State Department of Corrections and Community

Supervision ("DOCCS").  The Court has held that defendants had infringed plaintiffs' rights to

familial association and to procedural and substantive due process, by wholly refusing plaintiff

John Doe ("Doe"), a parolee, contact with his infant son over two periods spanning 13 months.

In an interlocutory appeal, the Second Circuit affirmed.  A jury trial limited to damages remains.

This decision resolves the parties' motions *in limine*, which principally concern whether, and if

so in what manner, evidence of Doe's criminal record may be adduced at the damages trial.

I.      **Background**[1]

A.      **Defendants' Denial of Contact Between Doe and His Infant Son M.S.**

On October 18, 2004, Doe was convicted after a jury trial in New York State Supreme

Court, Bronx County, of one count of rape in the second degree, one count of sodomy in the

second degree, and one count of endangering the welfare of a child.  The complaining witness as

to these charges, which arose from events in 2002 and 2003, was the niece (then age 13–14) of

Doe's then-wife, Beverly Martin.  On May 11, 2005, Doe was sentenced to consecutive terms of

three-and-a-half to seven years, and two to six years, imprisonment.  On November 2, 2011, Doe

was released from prison, and thereafter began a term of parole.

Doe's parole conditions, imposed at the time of sentence, included Special Condition 13,

which stated that Doe "will have no contact with any person under the age of eighteen, without

the written permission of the supervising parole officer."  Pursuant to that condition, Doe, whose

marriage to Martin had ended in 2005, was permitted, in 2012, to have unsupervised visits with

his 12-year-old daughter, L.S.  No adverse incidents were reported in connection with these

visits.[2]  Pursuant to other parole conditions, Doe was also required to participate in sex-offender

and substance abuse treatment, both of which he successfully completed.

In September 2012, Doe's son, plaintiff M.S., was born to Doe and his wife, plaintiff

Jane Doe, a longtime acquaintance whom Doe had married in September 2007.  Doe had timely

notified his parole officer of Jane Doe's pregnancy.  For the first month of M.S.'s life, Doe lived

---

[1] A fuller account of the background of this case is set out forth in the Court's decision on the
parties' motions for summary judgment, *see Doe v. Lima*, 270 F. Supp. 3d 684 (S.D.N.Y. 2017)
("*Doe SJ*"), *aff'd sub nom. Doe v. Cappiello*, 758 F. App'x 181 (2d Cir. 2019), from which the
following abbreviated summary draws.

[2] There is no evidence that Doe, who is the father of eight children with five women, had ever
abused or mistreated any of his children.

2

with Jane Doe and M.S. in their Bronx residence.  However, at a meeting with parole officers in

October 4, 2012, Doe was told that Special Condition 13 prohibited him from living with his

infant son.  Doe moved into a homeless shelter.  About five months later, in February 2013,

Doe's parole officer allowed him to move back in with Jane Doe and M.S., and Doe did so,

without incident.  But in August 2013, defendant parole officers again instructed Doe that he was

not permitted to have any contact with M.S.  In September 2013, Doe once more moved into a

homeless shelter.  Despite repeated requests by Doe for parental contact, made in an escalating

series of informal and formal communications to defendant parole officers, including through

counsel, Doe was denied contact with M.S., and barred from living in his home, over the ensuing

period of more than eight months.

### B.  Doe's Filing of This Lawsuit, and DOCCS's Order Allowing Doe to Return Home and Resume Contact with M.S.

On April 25, 2014, barred from contact with M.S., Doe filed this lawsuit, in which he

sought, *inter alia*, emergency relief.  Doe's application for such relief was the subject of a series

of emergency hearings before this Court.  At the time, a parental case conference with Doe and

Jane Doe was scheduled with William Hogan, the DOCCS regional director responsible for

supervising the offices and officials who supervised Doe's parole.  The Court encouraged Hogan

to address and rule promptly on Doe's appeal, to permit the Court—if Hogan's ruling did not

moot Doe's bid for emergency relief—to take Hogan's assessment into account.  On May 5,

2015, Hogan met with Doe and Jane Doe and their attorneys.

On May 22, 2014, Hogan issued a decision reversing the ban on contact imposed by the

subordinate parole officials and permitting Doe to have contact with M.S.  Hogan's order stated

that Special Condition 13 is "modified to allow [Doe] contact with his biological son, [M.S.].

This may result in possible reunification with his son in the marital household."  Pursuant to

3

Hogan's ruling, around June 4, 2014, Doe received modified parole conditions from his parole officer, which permitted Doe to have unrestricted contact with M.S. Doe thereafter returned to reside with Jane Doe and M.S. at the family's residence in the Bronx.

### C. The Court's Entry of Summary Judgment as to Liability

Following Hogan's ruling, plaintiffs (Doe, Jane Doe, and M.S.) withdrew their motions for preliminary relief, and this case proceeded as a damages action. On July 15, 2015, the Court issued a decision dismissing two defendants, but otherwise denying all motions to dismiss. *See Doe v. Annucci*, No. 14 Civ. 2953 (PAE), 2015 WL 4393012 (S.D.N.Y. July 15, 2015). A third defendant, who was named solely in connection with plaintiffs' claims for injunctive relief, was later voluntarily dismissed when Doe's term of parole ended.

On August 31, 2017, after the close of discovery, the Court issued a lengthy decision resolving the parties' cross-motions for summary judgment as to liability. The Court granted summary judgment to plaintiffs as to liability on all claims. The Court held that the defendant parole officials, by categorically banning contact between Doe and his infant son without any tailoring of the restriction on Doe's liberty interest in familial association to the state's asserted interest in M.S.'s safety, had—during both periods in which Doe had been separated from his wife and son—violated plaintiffs' rights to freedom of association, substantive due process, and procedural due process. *See Doe SJ*, 270 F Supp. 3d at 701–10.

The Court further held that defendants were not entitled to qualified immunity on these claims because the fundamental rights at issue had been well-established, by a long line of Supreme Court and Second Circuit cases holding that a parent has a fundamental liberty interest in maintaining a relationship with his or her child protected by the Due Process Clause; that the child has a reciprocal interest; that restrictions on these liberty interests are subject to strict

4

scrutiny and as such must be narrowly tailored to serve a compelling state interest; and that these standards apply to parole conditions akin to those at issue. And, the Court noted, the procedural rights of a parent and child to a pre-deprivation hearing, or to a prompt post-deprivation hearing, had also been well-established in the Second Circuit. *Id*. at 710–11.

Applying these principles, the Court held that, as to the first period in which Doe had been separated from M.S. (October 2012 to February 2013), "some brief, initial period of mandated separation was presumably lawful (and certainly protected by qualified immunity) to enable the officers to gather facts and determine, in good faith, whether M.S. could safely be with Doe." *Id*. at 711. However:

> (1) there was no basis for such a period to last four months, and the officials' investigative efforts were sparse and effectively ended within two weeks; (2) the parole officers' decision to bar all contact was based not on a concerted investigation into the risk Doe posed to M.S., but on a blatant misreading of the special condition to bar all contact with M.S. and to leave the parole officials powerless to permit such contact, whereas in fact the condition gave the parole officials that very discretion and no DOCCS policy required Parole Board approval before the officials could so act; (3) even assuming the facts justified some restrictions on contact between Doe and M.S.—such as supervised visitation—or made such restrictions within the protection of qualified immunity, the parole officials here imposed a blanket restriction and admittedly made no attempt to tailor the restriction to Doe's circumstances; and (4) the officers altogether denied Doe a prompt post-deprivation hearing. These basic lapses were not judgment calls of the sort sheltered by qualified immunity.

*Id*. (record citation omitted). As to the second period in which Doe had been separated from M.S. (September 2013 to May 2014), the Court held:

> [T]he Court assumes *arguendo* that imposition of some restrictions on Doe's contact with M.S. was justifiable within the protection of qualified immunity once the parole officials senior to [the line parole officer] decided to review her grant of permission to Doe to return home. However, (1) despite taking more than two months between reopening this issue and demanding that Doe leave his home, the parole officers did not provide him a pre-deprivation hearing; (2) the investigation under the DOCCS protocol did not begin for a month after Doe left home, and, also without any evident justification, lasted four-and-a-half months, some three months beyond the 45-day period that the Protocol gave for such investigations; (3) the parole officers, in opting again for a complete ban on contact with M.S., again failed

to tailor—or consider tailoring—this restriction, by now in the face of compelling evidence that a complete ban was unjustified; and (4) the officers altogether denied Doe a post-deprivation hearing, until Doe's lawsuit and bid for emergency relief in this Court forced them to resort to Hogan, the DOCCS regional director, to convene such a hearing (and to lift the ban, nearly nine months after it was imposed). These lapses, too, were patent breaches of due process that fell outside the protection that qualified immunity extends for good-faith judgment calls. This was not a case in which there was "an objectively reasonable basis for the[ ] decision, *whichever way they make it*." *Doe ex rel. Doe v. Whelan,* 732 F.3d 151, 155 (2d Cir. 2013) (emphasis in original).

*Id.* at 711–12 (citation omitted). Accordingly, the Court held, "at the most, qualified immunity would bar liability for a very limited portion of the two periods." *Id.* The Court, finally, found as to each of the remaining defendants that the undisputed facts established each's involvement in depriving plaintiffs of their substantive and procedural due process rights during one or both of the periods in which Doe had been separated from M.S. *Id.* at 712–17.

### D.       The Second Circuit's Affirmance

On defendants' interlocutory appeal on the issue of qualified immunity, the Second Circuit affirmed, "for substantially the same reasons set forth in the district court's opinion." *See Doe v. Cappiello*, 758 F. App'x at 183. "Because no reasonable officer could conclude that Defendants' actions were legal," the Circuit held, "Defendants are not entitled to qualified immunity." *Id.*

### E.       The Pending Motions *in Limine*

Following the affirmance, the parties—facilitated by a series of extensions approved by the Court—attempted to settle this matter without the need for a trial as to damages. *See, e.g.*, Dkts. 324, 326, 328, 330, 332, 334, 338. On October 22, 2019, counsel jointly notified the Court that although settlement discussions had not succeeded, the resolution of anticipated motions *in limine* had potential to produce settlement. Dkt. 341. The Court accordingly set a schedule for such motions. *See* Dkt. 342; *see also* Dkt. 344 (modifying schedule on request).

6

On December 9, 2019, the Court received motions *in limine* and memoranda of law from Doe, Dkt. 345 ("Doe Mem."), and defendant James Cappiello, Dkt. 346; *see also* Dkt. 347 (declaration of Robert A. Soloway, Esq.); Dkt. 350 (refiled Cappiello motion) ("Cappiello Mem."). On December 23, 2019, the Court received opposition memoranda from: Doe, Dkt. 354 ("Doe Opp."); Cappiello, Dkt. 355 ("Cappiello Opp."); *see also* Dkt. 356 (second declaration of Robert A. Soloway, Esq.); defendants Joseph Lima and Simon Valerio, Dkt. 353; and defendant Richard Rosado, Dkt. 357, which joined in his co-defendants' briefs. On December 27, 2019, in response to a joint letter seeking leave to file reply briefs, Dkt. 359, the Court authorized such replies, Dkt. 360. On January 9, 2020, the Court received replies from Doe, Dkt. 363 ("Doe Reply"), and Cappiello, Dkt. 364; *see also* Dkt. 366 (third declaration from Robert A. Soloway, Esq.).

## II.   Discussion

The motions *in limine* here largely concern Doe's prior convictions and whether they are properly admitted, and if so for what purpose, at the damages trial. Three such convictions or sets of convictions, all involving violations of New York State law, are at issue.

First, on January 22, 1981, Doe, as a juvenile offender, pled guilty to robbery in the first degree (the "1981 Robbery Conviction"). He was sentenced to 28 months to seven years of imprisonment. Second, on April 4, 1988, Doe pled guilty to two counts of robbery in the first degree (the "1988 Robbery Conviction"). He was sentenced to concurrent terms of six to 12 years imprisonment. Third, as noted, on October 18, 2004, Doe was convicted of one count of rape in the second degree, one count of sodomy in the second degree, and one count of endangering the welfare of a child (the "2004 Sex-Offense Convictions"). He was sentenced to consecutive terms of imprisonment of three-and-a-half to seven years, and two to six years; he

had served more than eight years of this sentence before his release on November 2, 2011.  *See Doe SJ*, 270 F. Supp. 3d at 689–90.

The *in limine* motions together raise a number of issues regarding the proper role at the damages trial of evidence of Doe's criminal history.  The Court, after reviewing governing legal principles, resolves the distinct issues presented by such evidence.  The Court then resolves the remaining issues raised.

### A.      Applicable Legal Principles

"The purpose of an *in limine* motion is to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial. . . .  Evidence should not be excluded on a motion *in limine* unless such evidence is clearly inadmissible on all potential grounds."  *Hart v. RCI Hosp. Holdings, Inc.*, 90 F. Supp. 3d 250, 257 (S.D.N.Y. 2015) (internal quotation marks and citations omitted).  A court's ruling on such a motion is "subject to change when the case unfolds, particularly if the actual testimony differs from what was contained in [a party's] proffer."  *Luce v. United States*, 469 U.S. 38, 41 (1984).

The motions *in limine* here, while implicating other rules, turn largely on application of Federal Rules of Evidence 401, 403, and 404(b).

Rule 401 defines evidence as "relevant" if it is material evidence having "any tendency to make a fact more or less probable than it would be without the evidence."  Fed. R. Evid. 401.

Rule 403 authorizes a court to exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.

Rule 404(b)(1) prohibits evidence of a crime, wrong, or other act being used to show propensity—that on a particular occasion the person acted in accordance with a particular character trait.  But Rule 404(b)(2) provides that such evidence "may be admissible" for other purposes, such as to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident," provided the probative value of such evidence is not outweighed by the risk of unfair prejudice.  *See United States v. Ortiz*, 857 F.2d 900, 903 (2d Cir. 1988); *see also* Fed. R. Evid. 404(b).  The Second Circuit takes an "inclusionary approach" to Rule 404(b), under which evidence of crimes, wrongs, and other acts may be received "for any purpose other than to show a defendant's criminal propensity, as long as the evidence is relevant and satisfies the probative-prejudice balancing test of Rule 403."  *See, e.g.*, *United States v. Carboni*, 204 F.3d 39, 44 (2d Cir. 2000).  For evidence to be received under Rule 404(b), it must relate to an issue in dispute.  *See United States v. Scott*, 677 F.3d 72, 83 (2d Cir. 2012) (abuse of discretion to admit evidence under Rule 404(b) to show identity where identity was not in dispute).

### B.    Doe's Prior Convictions as Means of Impeachment

The Court considers first Doe's motion to exclude the prior convictions as means of impeaching his trial testimony, see Doe Mem. at 5–7, which Cappiello opposes, *see* Cappiello Opp. at 1–9.

This issue is governed by Federal Rule of Evidence 609, which provides:

> **(a) In General.** The following rules apply to attacking a witness's character for truthfulness by evidence of a criminal conviction:
>
> > **(1)** for a crime that, in the convicting jurisdiction, was punishable by death or by imprisonment for more than one year, the evidence:
> >
> > > **(A)** must be admitted, subject to Rule 403, in a civil case or in a criminal case in which the witness is not a defendant; and

**(B)** must be admitted in a criminal case in which the witness is a defendant, if the probative value of the evidence outweighs its prejudicial effect to that defendant; and

**(2)** for any crime regardless of the punishment, the evidence must be admitted if the court can readily determine that establishing the elements of the crime required proving—or the witness's admitting—a dishonest act or false statement.

**(b) Limit on Using the Evidence After 10 Years.** This subdivision (b) applies if more than 10 years have passed since the witness's conviction or release from confinement for it, whichever is later.  Evidence of the conviction is admissible only if:

**(1)** its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect; and

**(2)** the proponent gives an adverse party reasonable written notice of the intent to use it so that the party has a fair opportunity to contest its use.

**(c) Effect of a Pardon, Annulment, or Certificate of Rehabilitation.** Evidence of a conviction is not admissible if:

**(1)** the conviction has been the subject of a pardon, annulment, certificate of rehabilitation, or other equivalent procedure based on a finding that the person has been rehabilitated, and the person has not been convicted of a later crime punishable by death or by imprisonment for more than one year; or

**(2)** the conviction has been the subject of a pardon, annulment, or other equivalent procedure based on a finding of innocence.

**(d) Juvenile Adjudications.** Evidence of a juvenile adjudication is admissible under this rule only if:

**(1)** it is offered in a criminal case;

**(2)** the adjudication was of a witness other than the defendant;

**(3)** an adult's conviction for that offense would be admissible to attack the adult's credibility; and

**(4)** admitting the evidence is necessary to fairly determine guilt or innocence.

**(e) Pendency of an Appeal.**  A conviction that satisfies this rule is admissible even if an appeal is pending. Evidence of the pendency is also admissible.

Fed. R. Evid. 609.

To be received as evidence of Doe's character for truthfulness, Doe's 1981 and 1988 robbery convictions and his 2005 sex offense convictions must, consistent with Rule 609(a)(1), satisfy Rule 403's balancing test.  That is because none of these convictions falls within Rule 609(a)(2).  Although Doe's convictions are for gravely serious offenses, they are a far cry from the offenses (*e.g.*, perjury, fraud, or making a false statement) to which Rule 609(a)(2) applies.  *See, e.g.*, *United States v. Hayes*, 553 F.2d 824, 827 (2d Cir. 1977) (Rule 609(a)(2) refers to convictions for offenses "in the nature of *crimen falsi*, the commission of which involves some element of deceit, untruthfulness, or falsification bearing on the accused's propensity to testify truthfully" (internal quotation marks omitted)).  Establishing the elements of Doe's robbery offenses did not require "proving—or the witness's admitting—a dishonest act or false statement."  Fed. R. Evid. 609(b); *see, e.g.*, *Hayes*, 553 F.2d at 827 ("[C]rimes of force, such as armed robbery or assault, . . . do not come within [Rule 609(a)(2)]."); *Ramsay-Nobles v. Keyser*, No. 16 Civ. 5778 (CM), 2020 WL 359909, at *2 (S.D.N.Y. Jan. 22, 2020) ("[A]s a general rule in the Second Circuit, the violent crimes of robbery, burglary and assault are not deemed to fall within the meaning of the phrase 'dishonest act or false statement' as used in Rule 609(a)(2)." (citations omitted)).

Similarly, Doe's sex offenses fail to qualify as *crimen falsi* under Second Circuit law and are outside the reach of Rule 609(a)(2).  *See, e.g.*, *United States v. Rosa*, 11 F.3d 315, 336 (2d Cir. 1993) (affirming exclusion of evidence of rape "as having an insufficient bearing on the witness's credibility"); *United States v. Rabinowitz*, 578 F.2d 910, 912 (2d Cir. 1978) ("We fail to see the logical relevance of the evidence sought to be adduced—prior acts of sodomy upon young children and consequent psychiatric treatment therefor—to the credibility of the witness.").

11

Further, Doe's two robbery offenses, which occurred more than 30 years ago, would have to clear the heightened balancing test of Rule 609(b), which applies to offenses as to which "more than 10 years have passed since the witness's conviction or release from confinement for it, whichever is later." Fed. R. Evid. 609(b).[3] Unlike Rule 403, which authorizes the exclusion of evidence whose probative value is substantially outweighed by the countervailing factors, Rule 609 inverts this test, and permits the receipt of such convictions as evidence of character for truthfulness only where "its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect." *Id*.

To the extent offered as evidence of Doe's character for truthfulness, none of the prior offenses satisfies Rule 403, let alone the more demanding balancing test of Rule 609(b). As to probative value, the commission of these offenses, by nature, does not bear on the offender's character for veracity. That is because the offenses' elements do not include false, fraudulent, or misleading statements or conduct. And on the opposite side of the equation, there is a great risk that a jury who learned of Doe's crimes would discount his testimony as to the damages he and his wife and son experienced from his DOCCS-compelled separation from his family, not because his account lacked veracity, but because jurors loathed Doe for his vile crimes. Such would be paradigmatic unfair prejudice, which under Rule 403 weighs against admission.

Cappiello counters that a sustained inquiry into the facts of Doe's robbery or sex offenses might yield evidence of deceptive conduct. As to the robberies, he posits that these were not "bar fights" or "impulsive angry murders" but were "armed thefts, planned and committed in concert with others." As to the sex offenses, he quotes from the summation of the Assistant

---

[3] Rule 609(b) does not apply to Doe's sex offenses, because he was released from confinement on them on November 2, 2011. Provided that Doe's trial testimony in this case occurs before November 3, 2021—as it will—Doe cannot invoke that rule as to the sex offenses.

District Attorney at Doe's trial, chronicling Doe's predations against his niece.  *See* Cappiello

Opp. at 5–6.  But even Cappiello's account of these crimes, by its terms, does not recite concrete

falsehoods or deceits by Doe.  And an exploration at trial of the particulars of these offenses, to

indulge Cappiello's hope that this inquiry might unearth such deceptive acts, would invite a "trial

within a trial," hijacking a targeted inquiry into damages and converting it into an exploration of

decades-old crimes.  This would at once promote delay, risk confusing the jury as to its finite

mission, and create a high risk of unfair prejudice to plaintiffs.[4]  *See, e.g.*, *Ricketts v. City of

Hartford*, 74 F.3d 1397, 1414 (2d Cir. 1996) (no abuse of discretion "in determining that a trial

within a trial . . . would have been more confusing than helpfully probative"); *United States v.

Aboumoussallem*, 726 F.2d 906, 912–13 (2d Cir. 1984) (affirming exclusion of similar act

evidence under Rule 403 given that confusion and delay caused by trial within a trial would have

substantially outweighed probative value of evidence); *United States v. Levin*, No. 15 Cr. 101,

2016 WL 8711458 (KBF), at *10 (S.D.N.Y. Jan. 8, 2016) (evidence introduced for impeachment

purposes must not "lead the Court down the path of a 'trial within a trial' on a peripheral issue.").

Indeed, for this reason, in fact, even when Rule 609 evidence is received at a jury trial, it

generally is limited to the "essential facts" of the conviction, *see United States v. Estrada*, 430

F.3d 606, 616 (2d Cir. 2005), and it is generally improper to admit details of a witness's offense

beyond that "necessary to establish a criminal conviction," *United States v. Tomaiolo*,

249 F.2d 683, 687 (2d Cir. 1957).  *See also Estrada*, 430 F.3d at 617 ("[D]istrict courts will

admit evidence of the nature of a witness's prior felony convictions, including the statutory name

---

[4] Moreover, under Rule 609(b), "convictions over 10 years old [should] be admitted very rarely and only in exceptional circumstances," as "convictions over ten years old generally do not have much probative value."  Fed. R. Evid. 609(b) advisory committee's note.

of the offense, the date of conviction, and the sentence imposed, *subject to Rule 403*." (emphasis added)).

The Court accordingly precludes defendants from offering evidence of Doe's prior offenses at trial as a means of impeaching his credibility.

### C.   Doe's Criminal Record and History as Substantive Evidence

The parties' briefs address the extent to which Doe's criminal record may be put before the jury as substantive evidence at the damages trial.  Four distinct issues are presented.

#### 1.   Doe's Status as a Parolee

At the outset, the Court will permit evidence to be received that Doe was on parole and supervised by DOCCS during the two periods when, at defendants' order, he was separated from M.S.[5]  Without this critical background, defendants' authority over Doe and the separation orders would otherwise not make sense.  But, to establish this context—that Doe was a parolee—does not require the jury to learn the offenses that he committed or his underlying criminal conduct.  Provided that the nature and facts of Doe's offenses are not revealed to the jury, the probative value (in promoting clarity) of the fact that Doe was a parolee outweighs any potential prejudice to him of alerting the jury that he was on parole (and thus had committed some crime).

#### 2.   Doe's Prior Separations from His Children

The parties disagree whether the fact that Doe has previously been separated from his family, by virtue of being in prison, can properly be received under Rules 403 and 404. *Compare* Cappiello Mem. at 7–14 *with* Doe Opp. at 3–5.  The Court will reserve on this question, lacking a detailed portrait of the anticipated trial testimony of Doe (and perhaps Jane

---

[5] Defendants favor permitting this evidence.  Plaintiffs, while not opposing it, are not committal on this point.  *See* Doe Opp. at 1 ("[T]he jury should be told no more than that during the periods of deprivation, Defendants were parole officers and John Doe a parolee.").

14

Doe) in support of plaintiffs' claimed damages, including for "pain and suffering experienced during the periods of deprivation." Doe Mem. at 5. Among other things, it is unclear the extent, if any, to which there will be testimony (on direct or cross examination) about Doe's experiences as a father of children other than M.S. Including M.S., Doe has eight children, with five women—four with ex-wife Martin, one (M.S.) with Jane Doe, and three with three other women. *See Doe SJ*, 270 F. Supp. 3d at 689.

For avoidance of doubt, however, it is possible that plaintiffs' testimony could open the door to evidence that Doe has previously been separated during lengthy periods from one or more of his older children. Evidence of Doe's separation(s) from his older children might be received for the purpose of attempting to impeach his claim of acute pain and suffering from his (combined) 13 months of separation from his youngest child, M.S. And evidence that Doe's earlier separations from his children were due to his imprisonment might be received, for the purpose of attempting to impeach his claim, perhaps, of an strong desire for contact with M.S., on the ground that, in the past, Doe has made a volitional decision to engage in conduct (committing a crime) that ran the risk of depriving him of liberty and familial contact. Were such evidence to be received, Doe, of course, could seek to refute such arguments, including, perhaps, by attesting that the separations from his older children too were traumatic, and/or that his special bond with Jane Doe and M.S. made the separations in 2012–2014 particularly hard.[6]

---

[6] This wait-and-see approach finds support in the false arrest cases the parties cited in connection with this issue. Those cases reached differing conclusions as to the admissibility of prior arrests, but universally treated the evidentiary question as one dependent on the nature of plaintiff's specific testimony and claim for damages. *See Smith v. Balt. City Police Dep't*, 840 F.3d 193, 203 (4th Cir. 2016); *Nelson v. City of Chicago*, 810 F.3d 1061, 1069 (7th Cir. 2016); *Udemba v. Nicoli*, 237 F.3d 8, 14 (1st Cir. 2001); *Karnes v. Skrutski*, 62 F.3d 485, 500 (3d Cir. 1995); *Stephen v. Hanley*, 03 Civ. 6226 (KAM), 2009 WL 1471180, at *8–9 (E.D.N.Y. May 21, 2009).

Although it is premature to apply Rule 403 to evidence of Doe's prior imprisonment if offered for such purposes, the Court notes that while the duration of Doe's imprisonment would not have otherwise been known, the fact of his prior imprisonment would be unsurprising to the jury given the evidence that he is a parolee. And, even if evidence of Doe's prior imprisonment were received, there would again be no basis to reveal to the jury the offenses for which Doe was in prison or his underlying criminal conduct. At most, the jury would learn that he had been in prison.

### 3.    Doe's Conditions of Parole

Defendants argue that the jury should be told that the crimes for which Doe was on parole were sex offenses, because this would enable the jury then to determine "what constitutionally permissible limitations could have been imposed by DOCCS" as conditions of his parole. Cappiello Mem. at 3. Plaintiffs oppose this bid. Doe Opp. at 2.

The Court will exclude this testimony, under Rule 403. Defendants propose to invite the jury to determine the restrictions that DOCCS parole officials, had they not unlawfully banned contact with M.S. altogether, would have imposed as conditions of Doe's release. Defendants argue that while Doe presumes that he would have enjoyed unrestricted contact with M.S., the jury, presented with evidence of Doe's sex crimes, might conclude that DOCCS would have put in place some permissible restrictions on such contact. On this premise, defendants argue, Doe would presumably be entitled to lower damages than had his contact with M.S. been unrestricted.

Defendants' argument is unpersuasive for two independent reasons.

First, there is no occasion for a jury to undertake a *de novo* inquiry into the conditions, if any, that a legally compliant DOCCS would have imposed on Doe's contact with his infant son. That exercise was already performed—by DOCCS itself after review by defendants' supervisor

16

Hogan.  In May 2014, on Doe's appeal, Hogan overturned the wholesale denial of parent-child contact and authorized contact between Doe and M.S.; soon thereafter, in early June 2014, Doe's parole officer authorized unrestricted contact between Doe and M.S.  There is no suggestion that DOCCS's assessment that no restrictions were needed was in error.[7]  And there is no charter to ask the jury to second-guess DOCCS's eventual decision—fully aware of the nature of the nature of Doe's offenses—that restrictions on Doe's contact with M.S. were unnecessary.  The jury may properly use that DOCCS decision as the benchmark against which damages from defendants' earlier ban on contact are to be measured.

Second, even if there were some utility to an independent inquiry into whether lesser restrictions on contact with M.S. were justified incident to Doe's parole, the limited probative value of evidence into that subject would be vastly outweighed by countervailing Rule 403 factors.  Permitting the jury to explore that subject would invite the classic "trial within a trial" that Rule 403 disfavors.  *See, e.g.*, *Aboumoussallem*, 726 F.2d at 912 (upholding exclusion of testimony to avoid "trial within a trial"); *Beastie Boys v. Monster Energy Co.*, 983 F. Supp. 2d 354, 358–59 (S.D.N.Y. 2014) (excluding introduction of allegedly infringing prior acts by movant, as it "would create a risk of unfair prejudice, confusion, and delay," diverting the jury's attention from the "singular event" at issue (citations omitted)); *United States v. Al Kassar*, 582 F. Supp. 2d 498, 500 (S.D.N.Y. 2008), *aff'd*, 660 F.3d 108 (2d Cir. 2011) ("[T]he situations are not, on their face, analogous, and it would require a trial within a trial before the jury could determine whether there was any meaningful analogy at all."); *ESPN, Inc. v. Office of Comm'r of*

---

[7] Nor does the record available to the Court reflect any statement by Hogan to the effect that, had he been reviewing Doe's case in October 2012—when defendants first barred Doe from M.S.— he would have found some restrictions on contact then warranted.

*Baseball*, 76 F. Supp. 2d 383, 407 (S.D.N.Y. 1999) ("The probative value of such an exercise is

vastly outweighed by the confusion and delay that would inevitably result from conducting

a trial within a trial."). It would detour a jury charged with making a targeted and limited

determination of damages resulting from Doe's separation from M.S. It would oblige the jury to

take on the assignment of making a complex assessment of how supervisory parole professionals

would have discharged their duties to fashion proper parole terms in the charged and complex

factual context of a sex offender who is a parent of an infant. This venture would materially

delay a short trial. It would also unfairly prejudice Doe, by alerting the jury to the harmful

fact—otherwise unnecessary to the damages inquiry—that his offenses were sex offenses. *See*

*United States v. Pascarella*, 84 F.3d 61, 69 (2d Cir. 1996) (evidence of prior crimes, wrongs, or

acts not admissible if "it is introduced for the sole purpose of showing defendant's bad character

. . . [or] is overly prejudicial under Fed. R. Evid. 403" (internal citations omitted)); *United States*

*v. Gotti*, 399 F. Supp. 2d 417, 419–21 (S.D.N.Y. 2005) (danger of unfair prejudice substantially

outweighed the probative value of evidence that defendant murdered a member of a rival crime

family); *Jennings v. Yurkiw*, No. 14 Civ. 6377 (SMG), 2018 WL 5630454, at *11

(E.D.N.Y. Oct. 31, 2018) (admitting § 1983 plaintiff's statement "that he could not go back to

Rikers Island because he had 'too many beefs there'" *in toto* "would have unduly prejudiced

Plaintiff by alerting the jury to his prior criminal history, which was not otherwise admissible,

and possibly causing the jury to infer that . . . he acted in accordance with violent acts he had

committed prior to that date")

### 4.    Punitive Damages

Defendants next argue that evidence of Doe's sex offenses and robbery convictions is

relevant to whether plaintiffs are entitled to punitive damages. Unlike compensatory damages,

18

as defendants note, punitive damages may turn, *inter alia*, on whether a defendant's conduct "was based on evil motive or intent, or characterized by outrageously callous indifference to the federally protected right infringed," which in turn requires the jury to be "fully informed of the facts the defendants knew about [Doe]" when denying him contact with M.S. *See* Cappiello Mem. at 2. Defendants' legal analysis is correct. *See, e.g.*, *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 535 (1999). The issue, however, is moot, because plaintiffs have foregone punitive damages. *See* Doe Mem. at 4–5; Doe Opp. at 3.

### 5. Conclusion

At the upcoming damages trial, the Court accordingly will permit evidence to be received of Doe's status as a parolee; will preclude evidence as to Doe's criminal record, both as to the crimes Doe has committed and the facts underlying those offenses; and will reserve judgment whether Doe's earlier separations from his older children, due to his imprisonment, will be received.

### D. Other Issues

Defendants' motions *in limine* raise several other issues.

### 1. Resumption of Doe's Deposition

Defendants note that Doe, at his deposition, declined to answer questions regarding his actions toward the victim of his sexual assaults, because Doe's appeal of his convictions for sex offenses was still pending. Cappiello Mem. at 14.[8] Defendants ask the Court to order Doe's deposition reopened to permit questions about Doe's "contacts with his victim and general statements about the criminal case in which he was convicted." *Id.*

---

[8] Plaintiffs report that Doe's sex-offense convictions are no longer on appeal. Doe Opp. at 6.

The Court denies that motion.  For the reasons stated above, the areas that defendants propose to probe at a reopened deposition—involving Doe's contact with his sex-offense victim—are irrelevant to the limited issue to be tried in this case, to wit, damages to plaintiffs resulting from Doe's mandated separation from M.S.  Defendants have not identified any area germane to that inquiry as to which Doe declined to answer deposition questions.[9]

### 2.     Doe's Alleged False Statements

In the event Doe testifies at trial, defendants seek to offer evidence of, or question him about, falsehoods or evasions that they claim he has made in four distinct contexts.

First, defendants state that they have concluded, based on documents they have recently reviewed relating to 1986 parole violation charges, that Doe may have given materially false testimony in his 2016 deposition in this case in describing "what took place" and "his own role" in the 1986 robberies of which he was convicted in 1988.  Cappiello Opp. at 7–9.  Defendants state that these documents suggest that Doe was untruthful in denying that (1) he (as opposed to an accomplice) personally possessed a firearm in connection with those robberies, and (2) he has ever personally possessed a firearm.  *Id.* at 8–9.

Second, defendants state that at a parole hearing in 2008 at which he sought early release, Doe purportedly attested to his innocence of the sex offenses, asserting that his niece had lied to law enforcement about these crimes, whereas in 2010, he gave a different account, acknowledging various forms of sexual contact with her.  *Id.* at 9.

---

[9] In light of this ruling, the Court has no basis to consider plaintiffs' alternative argument that defendants' delay in seeking to reopen the deposition warrants denying the request.  *See* Doe Opp. at 6–8.

Third, defendants state that, when arrested for robbery in 1986, Doe gave a false name, date of birth, and place of birth.  Cappiello Mem. at 4.

Fourth, defendants state that Doe and ex-wife Beverly Martin "entered into a corrupt agreement to secure greater kinship foster-care benefits from the Administration for Children's services by not disclosing [Doe's] presence in the home and thereby hiding [Doe's] contribution to the household's finances."  *Id*.

To the extent defendants envision offering extrinsic evidence of Doe's purported lies, the Court denies that motion.  *See* Fed. R. 608(b) (except for criminal convictions as addressed by Rule 609, extrinsic evidence inadmissible to prove specific instances of conduct in order to attack witness's character for truthfulness).

To the extent defendants seek to cross-examine Doe on these subjects, the Court will permit defense counsel to question Doe on the second subject, provided examination is limited to whether Doe maintained his innocence for—or made inconsistent statements about—the offense for which he is on parole.  The Court expects that, if defense counsel's factual representations are correct, Doe will acknowledge the same and/or counsel will enter into a brief stipulation on this point.  For avoidance of doubt, the defense is not permitted to reference or inquire about the nature of Doe's conviction or the underlying facts.

The Court, however, will prohibit the defense from inquiring about the first subject, *i.e.*, whether his account of the robbery offense was accurate insofar as he distanced himself from possession of the gun.  Questioning along these lines would inevitably reveal the robbery offense and thus vitiate the Court's preclusion of evidence of that offense under Rule 609.  Under Rule 403, the limited probative value of establishing Doe's (assumed) falsehood as to the details of the robbery is significantly outweighed by the unfair prejudice of alerting the jury to the

otherwise inadmissible nature of this prior offense.  Also under Rule 403, the Court will prohibit the defense from inquiring about the third and fourth topics, which have limited probative value as Doe's alleged falsehoods occurred decades ago and relate to subjects far afield from the damages inquiry before the jury, and which have potential for significant unfair prejudice by suggesting criminal propensity beyond mere character for untruthfulness.

### 3.    Other Defense Requests

The Court understands the defendants' other requests, *see* Cappiello Mem. at 4–5, to be consented to or not ripe.  Plaintiffs do not intend to request attorneys' fees as a part of damages; to refer to defense counsel as state attorneys or to defendants' indemnification, provided that defense counsel does not suggest an inability to pay damages; or to request a specific amount of non-economic damages.  *See* Doe Reply at 3.  As to defendants' request for a jury award that is "not joint and several among the tortfeasors," Cappiello Mem at 4, the Court will resolve that question at trial, mindful that certain defendants are implicated only by one, not both, periods in question.

### CONCLUSION

For the reasons and in the manner reflected above, the Court grants in part and denies in the pending motions *in limine*.  The Clerk of Court is respectfully directed to terminate the motions pending at Dkts. 345, 346, 350 and 357.

An order will follow shortly as to next steps in this case, including the setting of a trial date.

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: February 13, 2020
        New York, New York