UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JOHN DOE and JANE DOE, Individually and on Behalf of
M.S. an Infant, as Next Friends,

Plaintiffs,

-v-

JOSEPH LIMA, Bureau Chief of the Manhattan VI Area
Office of the New York State Division of Parole; Parole
Officer EMILY SCOTT; Parole Officer SIMON
VALERIO; Senior Parole Officer RICHARD ROSADO;
and Senior Parole Officer JAMES CAPPIELLO,

Defendants.

14 Civ. 2953 (PAE)

OPINION & ORDER

---

PAUL A. ENGELMAYER, District Judge:

On August 31, 2017, The Court entered summary judgment for plaintiffs as to liability on

their claims under 42 U.S.C. § 1983 against the five remaining defendants in this action, who, at

relevant times, were all parole officers of the New York State Department of Corrections and

Community Supervision ("DOCCS").  The Court held that defendants infringed plaintiffs' rights

to familial association and to procedural and substantive due process, by wholly refusing plaintiff

John Doe ("Doe"), a parolee, contact with his infant son over two periods spanning 13 months.

In an interlocutory appeal, the Second Circuit affirmed.  A jury trial limited to damages remains.

The Court has also previously addressed various motions *in limine*, principally

concerning the admissibility of evidence regarding Doe's underlying criminal record.  Pending

now are two additional motions *in limine* by plaintiffs.  The first addresses evidence of the parole

condition that led to Doe's separation from his son ("Special Condition 13").  The second

addresses the testimony that two defendants—Emily Scott and James Cappiello—propose to

offer at the damages trial.

I.      **Background**[1]

The Court assumes familiarity with the facts and procedural history of this case.  The

Court describes here only the aspects of this litigation on which plaintiffs' motions turn.

A.      **Defendants' Denial of Contact Between Doe and His Infant Son M.S.**

On October 18, 2004, after a jury trial in New York State Supreme Court, Bronx County,

Doe was convicted on one count of rape in the second degree, one count of sodomy in the second

degree, and one count of endangering the welfare of a child.  The complaining witness as to

these charges, which arose from events in 2002 and 2003, was the niece (then age 13–14) of

Doe's then-wife, Beverly Martin.  On May 11, 2005, Doe was sentenced to consecutive terms of

three-and-a-half to seven years, and two to six years, imprisonment.  On November 2, 2011, Doe

was released from prison and thereafter began a term of parole.

Doe's parole conditions, imposed at the time of sentence, included Special Condition 13,

which stated that Doe "will have no contact with any person under the age of eighteen, without

the written permission of the supervising parole officer."  Pursuant to that condition, Doe, whose

marriage to Martin had ended in 2005, was permitted, in 2012, to have unsupervised visits with

his 12-year-old daughter, L.S.  No adverse incidents were reported in connection with these

visits.[2]  Pursuant to other parole conditions, Doe was also required to participate in sex-offender

and substance-abuse treatment, both of which he successfully completed.

---

[1] A fuller account of the background to this case is set out in the Court's decisions on the parties'
motions for summary judgment, *see Doe v. Lima*, 270 F. Supp. 3d 684 (S.D.N.Y. 2017) ("*Doe
SJ*"), *aff'd sub nom. Doe v. Cappiello*, 758 F. App'x 181 (2d Cir. 2019), and on the parties'
subsequent motions *in limine*, *see Doe v. Lima* ("*Doe II*"), No. 14 Civ. 2953 (PAE), 2020
WL 728813 (S.D.N.Y. Feb. 13, 2020), from which the following abbreviated summary draws.

[2] There is no evidence that Doe—the father of eight children with five women—has ever abused
or mistreated any of his children.

In September 2012, Doe's son, M.S., was born to Doe and his wife, plaintiff Jane Doe. Doe had timely notified his parole officer of Jane Doe's pregnancy.  For the first month of M.S.'s life, Doe lived with Jane Doe and M.S. in their Bronx residence.  However, at a meeting with parole officers on October 4, 2012, Doe was told that Special Condition 13 prohibited him from living with his infant son.  Doe thereafter moved into a homeless shelter.  About five months later, in February 2013, Doe's parole officer allowed him to move back in with Jane Doe and M.S., and Doe did so, without incident.  But in August 2013, defendant parole officers again instructed Doe that he was not permitted to have any contact with M.S.  In September 2013, Doe once more moved into a homeless shelter.  Despite repeated requests by Doe for parental contact, made in an escalating series of informal and formal communications to defendant parole officers, including through counsel, Doe was denied contact with M.S., and barred from living in his home, over the ensuing period of more than eight months.

### B.      This Lawsuit

On April 25, 2014, barred from contact with M.S., Doe filed this lawsuit, in which he sought, *inter alia*, emergency relief.  On May 22, 2014, after a series of emergency hearings before this Court, the DOCCS issued a decision reversing the ban on contact imposed by the subordinate parole officials, permitting Doe to have contact with M.S., and modifying Special Condition 13 accordingly.

Following this ruling, plaintiffs withdrew their motions for preliminary relief, and this case proceeded as a damages action.  The Court subsequently dismissed several defendants from the case, but otherwise denied all motions to dismiss.  *See Doe v. Annucci*, No. 14 Civ. 2953, 2015 WL 4393012 (S.D.N.Y. July 15, 2015).

After the close of discovery, the Court issued a lengthy decision resolving the parties' cross-motions for summary judgment as to liability. The Court granted summary judgment to plaintiffs as to liability on all claims. The Court held that the defendant parole officials, by categorically banning contact between Doe and his infant son without any tailoring of the restriction on Doe's liberty interest in familial association to the state's asserted interest in M.S.'s safety, had—during both periods in which Doe had been separated from his wife and son— violated plaintiffs' rights to freedom of association, substantive due process, and procedural due process. *See Doe SJ*, 270 F Supp. 3d at 701–10.

The Court further held that defendants were not entitled to qualified immunity on these claims because the fundamental rights at issue had been well-established, by a long line of Supreme Court and Second Circuit cases holding that: (1) a parent has a fundamental liberty interest, protected by the Due Process Clause, in maintaining a relationship with his or her child; (2) the child has a reciprocal interest; (3) restrictions on these liberty interests are subject to strict scrutiny and as such must be narrowly tailored to serve a compelling state interest; and (4) that these standards apply to parole conditions akin to those at issue. And, the Court noted, the procedural rights of a parent and child to a pre-deprivation hearing, or to a prompt post-deprivation hearing, had also been well-established in the Second Circuit. *Id.* at 710–11.

On defendants' interlocutory appeal on the issue of qualified immunity, the Second Circuit affirmed, "for substantially the same reasons set forth in the district court's opinion." *See Doe v. Cappiello*, 758 F. App'x at 183. "Because no reasonable officer could conclude that Defendants' actions were legal," the Circuit held, "Defendants are not entitled to qualified immunity." *Id.*

### C.       Previous Motions *in Limine*

Following the Second Circuit's affirmance, the parties filed a number of motions *in limine*.  These principally concerned the admissibility of evidence regarding Doe's prior New York state convictions.  As relevant here, the Court held that (1) Doe's prior convictions were inadmissible, both as means of impeachment and as substantive evidence; (2) Doe's status as a parolee was admissible, as critical background as to why defendants had authority over Doe; and (3) evidence that the crimes for which Doe was on parole were sex offenses was inadmissible, as irrelevant, wasteful, and prejudicial.  *Doe II*, 2020 WL 728813, at *5–8.

### D.       The Present Motions *in Limine*

After the Court resolved this first round of motions *in limine*, the parties filed a joint pre-trial order, proposed jury instructions, and proposed *voir dire* questions on July 15, 2020.  *See* Dkts. 389–391.  On the same day, plaintiffs filed another motion *in limine*, seeking to exclude evidence regarding Special Condition 13 at trial.  Dkt. 392 ("First MIL").

On July 21, 2020, the Court held a pre-trial conference.  Noting that the proposed joint pretrial order anticipated the testimony of several defendants without describing the anticipated subject matter of such testimony, the Court directed defendants Scott, Cappiello, and Rosado, by July 24, 2020, to supplement the joint pre-trial order with summaries of the testimony they intended to give at trial.  The Court gave plaintiffs until July 31, 2020, to file any motions *in limine* as to such testimony, and defendants until August 7, 2020, to respond.  Dkt. 399. Defendant Rosado did not submit any proposed testimony and withdrew his proposal to testify. Dkt. 400.  Scott and Cappiello, however, each submitted a summary of their proposed testimony. Dkts. 402 ("Scott Supp."), 403 ("Cappiello Supp.").  Plaintiffs have moved to exclude both

Scott's and Cappiello's proposed testimony.  Dkt. 405 ("Second MIL").  Cappiello opposed this motion, *see* Dkt. 406 ("Cappiello Ltr."), but Scott did not respond.

## II.    Discussion

The motions *in limine* here concern the admissibility of evidence regarding Special Condition 13 and the testimony of defendants Emily Scott and James Cappiello.

Special Condition 13, as discussed, is the parole condition that prohibited Doe from contacting persons under the age of 18 without the permission of his supervising parole officer, and which defendants applied to categorically prohibit him from living with his infant son.

According to her supplemental pre-trial submission, Scott proposes to testify about 14 topics, principally relating to her own involvement in the contact bans imposed on Doe, including "meetings and interviews" with Doe.  Scott Supp. ¶ 4.  Her submission also contemplates testimony on more general topics, such as her training history.  *Id.* ¶¶ 10–11.

Cappiello proposes to testify that he oversaw Scott, including in the application of Special Condition 13 to Doe, but only during the first of Doe's two periods of separation from M.S.  Cappiello Supp. at 1.  He seeks to testify that, during the second period, he had been reassigned to a different geographic area and had "no role whatsoever" in the separation.  *Id.*

### A.    Applicable Legal Principles

"The purpose of an *in limine* motion is to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial. . . .  Evidence should not be excluded on a motion *in limine* unless such evidence is clearly inadmissible on all potential grounds."  *Hart v. RCI Hosp. Holdings, Inc.*, 90 F. Supp. 3d 250, 257 (S.D.N.Y. 2015) (internal quotation marks and citations omitted).  A court's ruling on such a motion is "subject to

change when the case unfolds, particularly if the actual testimony differs from what was contained in [a party's] proffer." *Luce v. United States*, 469 U.S. 38, 41 (1984).

The motions *in limine* here turn largely on the application of Federal Rules of Evidence 401 and 403. Rule 401 defines evidence as "relevant" if it is material evidence having "any tendency to make a fact more or less probable than it would be without the evidence." Fed. R. Evid. 401. Rule 403 authorizes a court to exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

### B.      Admissibility of Evidence Related to Special Condition 13

No defendant has filed an opposition to plaintiffs' First MIL, related to Special Condition 13, likely because the Court has already resolved it, in substance, in plaintiffs' favor. *See* July 21, 2020 Conference Transcript ("Tr.") at 17, 20–21. In its February 13, 2020 order on the initial set of motions *in limine*, the Court excluded evidence "that the crimes for which Doe was on parole were sex offenses" under Rule 403. *Doe II*, 2020 WL 728813, at *8. This was, in large part, because it would "unfairly prejudice Doe, by alerting the jury to the harmful fact— otherwise unnecessary to the damages inquiry—that his offenses were sex offenses." *Id.* So too here. First, like the evidence of Doe's prior sex-crime convictions, evidence of Parole Condition 13 is irrelevant to the jury's assessment of damages. As the Court stated at the July 21, 2020 conference: "[T]here isn't really a proper place in the evidence at trial, which is about damages, for evidence of special condition 13 to be put before a jury[.]" Tr. at 21. The specific reason for Doe's separation from M.S. has no bearing on the quantum of harm plaintiffs suffered from that separation. Second, plaintiffs are correct that introducing evidence of Special Condition 13

would risk causing substantial prejudice to plaintiffs for the same reason that disclosing his criminal convictions would.  First MIL at 8–9; *see also* Tr. at 17, 20–21.  That is because parole conditions banning contact with minors generally are imposed exclusively on those convicted of sex offenses, *see* First MIL at 8, and evidence of such a condition would thus undermine the Court's previous ruling that evidence of Doe's sex-offense conviction is inadmissible.  Because evidence regarding Special Condition 13 is irrelevant to the damages inquiry and, even if relevant, would be substantially outweighed by its unfair prejudice to Doe, it is inadmissible.

### C.   Admissibility of Scott's Proposed Testimony

Plaintiffs also oppose Scott's proposed testimony on the grounds that it is irrelevant, would invite a "trial within a trial," and would be unfairly prejudicial.  Second MIL at 5–7.  Scott has not responded to these arguments.

The Court agrees with plaintiffs.  Scott has offered essentially no justification for her proposed testimony and has not explained how it relates to the damages to be determined at trial. Her proposed testimony about "when the case was assigned to her," her "review of the case file," her "conferences . . . with her supervisors," her understanding of "what she was directed to do by her superiors," her training, and the "basis for her actions" has no relationship to the damages plaintiffs suffered.  Scott Supp. ¶¶ 1–3, 10, 12–14.  Rather, it seems exclusively related to her own liability in this case, which has already been adjudicated.  Likewise, Scott's vague references to Doe's "disclosures" to her and her reaction to those disclosures, *see id.* ¶¶ 4–9, 11, do not seem related to his damages.  And Scott's submission does not elucidate what her purpose would be in offering this testimony.  *Cf. Dowling v. United States*, 493 U.S. 342, 351 n.2 (1990) (proponent of evidence bears the burden of demonstrating its relevance).  Further, to the extent that these "disclosures" concern Doe's criminal history or the conduct underlying it, the unfair

prejudice such testimony would cause plaintiffs would substantially outweigh any minimal inferential value it might have in Scott's case. *See* Scott Supp. ¶¶ 4–9. Accordingly, Scott's proposed testimony is inadmissible in its entirety, under both Rule 401 and Rule 403.

### D. Admissibility of Cappiello's Proposed Testimony

Finally, plaintiffs oppose Cappiello's testimony largely on the same grounds as Scott's, arguing that his testimony regarding his supervision of Scott and the application of Special Condition 13 goes only to liability, not damages, and is, in any event, unfairly prejudicial to plaintiffs. Second MIL at 6, 7. Further, plaintiffs oppose his proposed testimony about his lack of involvement in Doe's second period of separation from his child because it is irrelevant to determining "the amount of harm Plaintiffs suffered." *Id.* at 9. And even if this aspect of his testimony were relevant, plaintiffs argue, Cappiello's lack of involvement during the second separation period is already addressed by their proposed jury instructions. *Id.* at 6 & n.2. Cappiello counters that the jury will be charged with determining "not just the amount of damages the injury warrants, but, to the extent damages are severable, who caused it." Cappiello Ltr. at 1. Therefore, he argues, the only way he will be able to "defend himself individually" as to the period during which he did not harm plaintiffs is for him to testify about his lack of involvement. *Id.*

The Court will exclude Cappiello's proposed testimony about his duties, his supervision of Scott, and the application of Special Condition 13 to Doe, for the reasons given above with respect to Special Condition 13 and Scott's proposed testimony. These topics go exclusively to liability, not damages. And his testimony on these points would waste the jury's time, and risk confusing the jury and causing plaintiffs unfair prejudice.

Finally, as to Cappiello's concern that he not be wrongly found responsible for damages attributable to the second separation period, in which he did not participate, that concern is valid. However, for multiple reasons, it is unnecessary for Cappiello to testify at trial in order for him to obtain relief from compensatory damages assessed as to that period.[3]

The parties have already stipulated to the fact that Cappiello intends his testimony to establish: that he did not participate in the second period of separation between Doe and his child. In their Joint Stipulation of Facts, filed in connection with the parties' respective summary judgment motions, the parties agreed that Cappiello was assigned to the DOCCS Manhattan VI Area Office, which oversaw Doe's parole, only between September 2012 and April 2013. Dkt. 229 ("JSF") ¶ 6. The second period of separation, as the parties stipulated, did not begin until August 22, 2013. *Id.* ¶ 66–69. Thus, the parties have already stipulated to the facts Cappiello seeks to address. They remain bound by those stipulations. The Court presently anticipates directing the jury to tabulate damages separately for the two periods of separation, with the defendants who have been determined to be liable with respect to a given period held jointly and severally liable for damages incurred during that period. To the extent there were a need to establish for the jury which defendants were accountable for a given period, the parties' relevant fact stipulations could be received and would establish Cappiello's non-involvement during the second period. His live testimony to this stipulated fact is thus properly excluded "as cumulative and wasteful of the court's and the jury's time because the parties entered into a stipulation to that fact." *Madeira v. Affordable Hous. Found., Inc.*, 469 F.3d 219, 251 (2d Cir. 2006).

---

[3] Plaintiffs have forgone any request for punitive damages. *See Doe II*, 2020 WL 728813, at *9.

Moreover, the Court has additional tools at its disposal to protect Cappiello from being held accountable for damages incurred during the second period.  The Court's jury instructions can reinforce the requirement of separate damages findings for the two periods.  And, to the extent that the jury might be called upon to make defendant-specific damages calculations—as opposed simply to determining damages for each of the two periods—the Court can instruct the jury, based on the facts on which summary judgment was granted, which defendants participated in which period.  Plaintiffs' proposed jury instructions are in accord.  *See* Dkt. 394 at 15–16, 19.

Cappiello's testimony about his employment history and assignments would therefore be cumulative.  It is unnecessary to establish the discrete proper point: Cappiello's non-involvement in the second separation period.  *See Hamling v. United States*, 418 U.S. 87, 127 (1974) ("The District Court retains considerable latitude even with admittedly relevant evidence in rejecting that which is cumulative[.]"); *Int'l Mins. & Res., S.A. v. Pappas*, 96 F.3d 586, 596 (2d Cir. 1996).  And permitting testimony would likely mislead the jury to believe that Cappiello's credibility, temperament, or biography were otherwise relevant to damages, which they are not.

## CONCLUSION

For the foregoing reasons, plaintiffs' pending motions *in limine* are granted in full. Evidence that Doe was separated from M.S. because of defendants' application of Special Condition 13 will not be admitted at the upcoming damages trial.  Nor will the proposed testimony of Emily Scott or James Cappiello.

The Clerk of Court is respectfully directed to terminate the motions pending at dockets 392 and 405.

SO ORDERED.

_____
Paul A. Engelmayer
United States District Judge

Dated: August 14, 2020
       New York, New York